REBECCA S. THOMPSON *vs.* JASON C. EASTON.

September 5, 1883.

**Transfer of Securities and Evidences of Claims—Delivery.**—Papers evidencing claims and securities, and deeds transferring the same, are well delivered when the grantor puts them into the control of the grantee, with the intent that they shall pass to him, and the grantee assents.

Plaintiff brought this action in the district court of Fillmore county, alleging in her complaint that she had sold and transferred certain stocks to the defendant; that $15,000 of the purchase price therefor remains unpaid; that defendant agreed, upon making such purchase, to secure the payment of said $15,000 by delivering to one H. R. Wells certain claims and securities, amounting to $22,843.39, in trust for the plaintiff, Wells to collect such claims and securities and apply the proceeds to the payment of the $15,000; that the defendant has failed to keep his agreement, and has never transferred the claims and securities, and the plaintiff therefore prayed judgment for $15,000. The answer alleges full performance by defendant of the agreement; that the claims and securities were transferred to Wells; that Wells has accepted the trust; that it was a part of the agreement that defendant should retain the claims and securities in his hands for collection as agent for Wells; that he so retains them; and that he is willing to deliver them to the trustee or any person designated by the proper authority.

The action was tried before *Farmer*, J., and a jury, and plaintiff had a verdict. Defendant appeals from an order refusing a new trial.

The agreement between plaintiff and her husband (Clark W. Thompson) and the defendant, for the transfer of the claims and securities, (being Exhibit No. 1,) was as follows, viz.:

"Whereas J. C. Easton has this day sold and transferred to Rebecca S. Thompson all the foregoing referred to securities," (the securities referred to included, among others, those involved in this action,) "consisting of notes secured by deeds and mortgages, on which, in consideration of the premises, he covenants that there is actually due on them the amounts stated opposite the same, respectively, in the column headed 'Totals,' and it being desirable that he retain the same for adjustment and collection, it is stipulated that he may so retain for adjustment and collection, subject to order (or that of my husband, C. W. Thompson) for the same, of the proceeds or any portion thereof at any time; said Easton to protect said lands and securities from sale for taxes, and from unnecessary costs by reasons thereof, and to receive for his compensation for such securities hereinbefore referred to, besides his necessary disbursements, only the excess of interest he may receive or collect on such claims over and above the amount which may be due thereon respectively at the time of collection, with interest, computed at ten per cent. per annum." Then follows a provision for renewal and substitution of the notes and contracts, and the agreement continues as follows, viz.: "It is further stipulated and agreed that the claims hereinafter described and referred to, and which are also stated in the foregoing, to wit," (reciting the claims involved in this action, amounting to $22,843.39,) "are hereby expressly reserved and excepted from said transfer, and that the same shall be transferred by said Easton to H. R. Wells, in trust for said Rebecca S. Thompson, for the purpose of securing to her, from the proceeds of the collections therefrom, the sum of $15,-000, and such interest as is stipulated in such security, and that whenever that amount is so paid her or realized from the securities last mentioned, the remaining portion thereof or proceeds collected therefrom shall be retransferred to said Easton, or accounted for to him. Said Easton may at any time, on reasonable notice, surrender the notes and securities to be held by him for collection as herein provided for to said R. S. Thompson, and, from the time of such sur-

render, his duties and obligations relating to the collection of said claims or the adjustment thereof shall cease.

"Witness our hands," etc.

*H. G. Day* and *Cameron, Losey & Bunn,* for appellant.

*M. S. Wilkinson* and *Bigelow, Flandrau & Squires,* for respondent.

BERRY, J.   Upon careful study and consideration of the proceedings on the trial below, and of the arguments of counsel here, we have reached the following conclusions in this case:

1. The nine "claims" mentioned in the contract, (Exhibit No. 1,) amounting to $22,843.39, were not to be retained by Easton for adjustment and collection under the provisions of the first part of the contract.   They were to be *transferred* to H. R. Wells, in trust for Mrs. Thompson, to secure the payment to her of $15,000.

2. The evidence in the case shows· (and there is nothing of any substantial importance to the contrary) that there was a legal delivery of the papers evidencing and transferring these nine claims by Easton to Wells, as trustee, and an acceptance of the delivery by the latter.   The evidence on this point is the more significant and conclusive when we bear in mind (1) the unquestioned facts sworn to by Clark Thompson, that he "had the sole charge and management of the matter in behalf" of his wife, was personally cognizant of the transaction between her and the defendant, and acted as her "agent in everything relating to the fulfilment" of the contract; and (2) the fact stated in the brief of plaintiff's counsel, that the railroad stock, in payment or security for the price of which the claims and securities mentioned in the contract were turned out, was purchased by Easton *of Clark Thompson,* though payment therefor was to be made to his wife.   As respects the delivery of the papers evidencing and transferring the trust claims and securities to Wells, the undisputed facts clearly show that Easton put the papers into the control of Wells, with intent that they should pass to him, and that to this Wells :assented.   This was a good delivery of the papers, evidencing the claims and securities, as well as of the deeds of transfer made by Easton.   2 Greenl. Ev. § 297, and notes; *Stevens* v. *Hatch,* 6 Minn. 19, (64,) and cases cited.

3. The delivery by Easton to Wells was performance on Easton's part—a creation of the trust.

4. There is nothing in the contract to prevent Wells from employing Easton as his agent to manage and collect the trust claims and securities, or from putting them in Easton's hands for that purpose. Of course, this would not relieve Wells from personal responsibility for the proper execution of the trust.  Any misconception on the part of Wells or Easton as to whether the trust claims and securities were to be held by Easton for adjustment and collection, under the early provisions of the contract, would be unimportant in this case, where the main question is not how the trust has been managed, but whether it was created by a transfer from Easton to Wells.

5. If, upon the evidence, it be left in some doubt whether the trustee is disposed to manage and execute the trust, that is a matter of no consequence as against Easton in this action.  He has not only performed on his part in the creation of the trust, but, holding the trust claims and securities merely as agent for the trustee, he has not only repeatedly offered to surrender them, but he brings them into court to be disposed of as the court shall direct.

Without taking up the several positions of counsel in detail, it seems to us that these conclusions and considerations dispose of the merits of this case.

This is an appeal from an order denying defendant's motion for a new trial.    That, in our opinion, there was a mistrial will sufficiently appear from what we have said, but we imagine that, with reference to the views above expressed, a new trial will hardly be deemed advisable, unless upon a new state of evidence.    But, at any rate, defendant is entitled to have the order denying a new trial reversed, and it is so ordered.