## LILLIE LAURA HOOPER v. ARTHUR J. VANSTRUM.[1]

June 24, 1904.

Nos. 13,798—(80).

**Gift of Real Property.**

A voluntary gift of land may be upheld, if no fraud is practiced by or for the grantee, where the relationship of the parties and the beneficial character of the gift are such as would naturally justify the belief that the grantor intended to make and complete the same.

**Effect of Recording Deed.**

But when the possession of the conveyance is retained by the record owner, without a present intention to part with the absolute dominion of the property, and the grantee has no notice thereof, the record of such conveyance is ineffective to transfer title.

**Evidence.**

Evidence considered, and *held* that the record of a conveyance was insufficient to show a purpose to part with the ownership of real property by the grantor, who executed the same, but retained it in his possession until his death by suicide, without giving any notice thereof to the grantee, and that the finding of the trial court that such record was made with such purpose is not sustained.

[1] Reported in 100 N. W. 229.

Appeal by plaintiff from a judgment of the district court for Kittson county, entered pursuant to the findings and order of Watts, J. Reversed and new trial ordered.

*John Lind* and *A. Ueland*, for appellant.

*H. Steenerson* and *Charles Loring*, for respondent.

LOVELY, J.

Action to determine adverse claims to real estate. The court made findings to the effect that defendant was the owner of the property—a lot in the village of Hallock—and ordered judgment in accordance with the findings which were entered. Plaintiff appeals.

Plaintiff is the daughter of J. A. Vanstrum, deceased, who at the time of his death, November 29, 1902, was register of deeds of Kittson county. She claimed title under a duly probated will devising her father's entire estate, valued at about $10,000. Defendant is ·the nephew of deceased, and claims under a warranty deed of the property in question, ·having the consideration of $1,000 stated therein, and appearing to have been executed with the requisite legal formalities. The deed was on October 25, 1902, recorded by the grantor, but retained by him among his papers, where it was found after his death, and the material question is whether this conveyance establishes a superior right in the grantee to that of the devisee.

Premising to a better understanding of the facts found by the court, it is proper to state that some twenty years before this action there was a legal separation between deceased and his wife. The wife went with plaintiff, the only daughter of the marriage, to California, where both have resided ever since, and all relations between her, the mother, and testate were severed from the time of the divorce. The defendant and his brother F. O. Vanstrum reside at Minneapolis, where they are in the clothing business. The relations between them and the deceased had been very cordial and friendly. In April, 1897, deceased executed a will devising to the nephews his entire estate. For some time previous to the execution of the deed to defendant, the deceased became afflicted with insane delusions, which affected his health, and to some extent his understanding, although he was capable of conducting his ordinary business affairs· and his official duties as register of deeds; but he was possessed of the unfounded impression that a lady in the

village of Hallock was malignantly endeavoring to injure him by throwing flashlights upon him, which mania destroyed his peace of mind and ultimately led to self-destruction. The will to the daughter was executed subsequent to the deed to the defendant, and necessarily took precedence of the former will to the nephews. There was no consideration, in fact, for the deed of the lot in Hallock, which was worth about $1,500. After the suicide it was found among the papers of deceased, which conveyed the first knowledge defendant had of an intention by the grantor to make the voluntary gift to him.

At the trial the contention of the plaintiff was that the deed of defendant was not executed by a person possessing the proper alienary mental capacity, and that it had not been delivered, or that there was not sufficient evidence to show that it had been executed and recorded with the present intent to deliver the same to the grantee, but, rather, to prevent the supposed enemy of the deceased from subjecting it to suits for damages on account of remarks and statements made derogatory to her.

The trial court found, among other things, in terms as follows:

> That John A. Vanstrum when he made the deed was not subject to delusions or insanity to such an extent as to render him incapable of executing or delivering it, or influencing him in the disposition of his property, and that when he made the said deed he had it recorded with the intent that the same should be a delivery of such conveyance to the defendant.

We are satisfied from an examination of the evidence that the finding that J. A. Vanstrum was not possessed of a delusion sufficient to render him incapable of executing or delivering it, or influencing him in the disposition of his property is supported to such an extent that we would be required to sustain it, but the crucial question whether the deed to defendant was executed with an intent to deliver it to the defendant remains, and is, under the views we have been required to adopt, unsupported by the evidence, and must be resolved against the conclusion of the trial judge. There is evidence tending to show that the grantor had spoken about reserving the lot for the defendant, but he never at any time informed him of this purpose, nor did he notify

him that he had made the deed.   He drew it himself, placed it upon record, and then put it away among his own private papers.

There is undisputed testimony to the effect that, when asked by an interested party to sell the property for a good offer which had been made, he stated that he could not do it; that he had deeded it to protect it from his supposed enemy; that it was a sham; that, while he could not then make the sale, when he saw his nephew he could get a reconveyance, so it could be sold.   Other testimony fully corroborates this condition of deceased's mental capacity on that subject.   It also appears that the deceased had a number of other lots in Hallock, which he did not convey, but that his entire bank account, of about $5,000, was transferred from a local bank to one in Minneapolis.   Shortly after recording the deed, deceased wrote to his nephew—but he did not tell him that he had given him the lot—but stated that there was something he wished to communicate to him.   Soon after he was the victim of his unfortunate malady, and took his own life under painful and distressing circumstances; giving no information to defendant of his purpose to convey the property to him, or even of the existence of the deed.

A delivery of a deed in the lifetime of the grantor is essential to its validity, whether it be a conveyance for value, or a voluntary one, in consideration of love and affection.   The question of the delivery of a deed or other written instrument is one of intention, and, to constitute a complete delivery thereof, the grantor must deal with it in a way evincing an intention to part presently and unconditionally with all control over it, and that it shall take effect according to its terms. Stevens v. Hatch, 6 Minn. 19 (64); Comer v. Baldwin, 16 Minn. 151 (172); Thompson v. Easton, 31 Minn. 99, 16 N. W. 542; Conlan v. Grace, 36 Minn. 276, 30 N. W. 880; Nazro v. Ware, 38 Minn. 443, 38 N. W. 359; Lee v. Fletcher, 46 Minn. 49, 48 N. W. 456; Barnard v. Thurston, 86 Minn. 343, 90 N. W. 574.

It is said in the last case cited that authorities sustain the rule that where a deed which is beneficial to the grantee, and imposes no burdens upon him, is delivered unconditionally by the grantee to a third party, who has knowledge of it, his acceptance will be presumed, and the delivery completed.   Further than this we have not gone in sustaining the necessary delivery in any case, and while there are some

authorities which hold that a presumption arises that there is a delivery from the fact that the deed is recorded, as in Fenton v. Miller, 94 Mich. 204, 53 N. W. 957, where the grantor was the recorder, this presumption was held to be only of intention, which might be rebutted. See also Glaze v. Three Rivers, 87 Mich. 349, 49 N. W. 595; Patrick v. Howard, 47 Mich. 40, 10 N. W. 71.

A voluntary gift of property is always subjected by the courts to close scrutiny, and should be supported by satisfactory and convincing evidence; and we think that in this regard the evidence is so preponderating and conclusive that a present intent to deliver or pass the property to defendant absolutely was not shown, that the finding of the learned trial court cannot be sustained in this respect. The fear of suits for damages; the grantor's efforts to protect his property by the transfer of his bank account; the change of the will from the nephews to the daughter, who was his heir at law; the mental distraction of the grantor; the retention of the deed among his private papers during his life; the failure to communicate the purpose to convey to the person for whose benefit the deed was apparently executed, who was so easily accessible; the positive statements, which are not contradicted, that the deed was made only as a cover, and not for the benefit of the defendant; the mention of a money consideration, rather than for love and affection—lead to the conclusion that it was probably intended as a formal matter only, and is insufficient to establish the claim that there was a present intent to deliver, which is requisite in such cases to complete the benefaction. In other words, whatever presumption existed, conceding that the rule adopted in the Michigan case referred to exists here, was so thoroughly overcome that the failure to make actual delivery, or to establish the intent to do so, remains as a paramount and insuperable difficulty in the way of sustaining the finding of the trial court that the instrument was recorded with the intent to have such act constitute a full alienation of the property.

The judgment of the trial court is reversed, and new trial ordered.