## MARSHALL STATE BANK v. FIRST STATE BANK OF BALATON AND ANOTHER.[1]

January 8, 1926.

No. 24,897.

**Transfer of notes from defendant bank to plaintiff held to be discount and sale of them.**

Under the proofs, it is *held* that the transaction between the two banks amounted to a discount and sale of the promissory notes in question, and that the plaintiff is not entitled to recover in this action.

Banks and Banking, 7 C. J. p. 718 n. 83 New.
Bills and Notes, 8 C. J. p. 369 n. 14, 15.

Action in the district court for Lyon county to recover amount loaned. The case was tried before Gislason, J., who ordered judgment in favor of plaintiff. Defendants appealed from an order denying their motion for a new trial. Reversed.

*Clifford L. Hilton*, Attorney General, *Rollin L. Smith*, Assistant Attorney General, and *A. R. English*, Special Attorney, for appellants.

*J. V. Williams, Edgerton, Dohs & Edgerton*, for respondent.

QUINN, J.

This action was commenced in May, 1923, to recover the sum of $18,523.56 for money claimed to have been loaned by the plaintiff bank. During the pendency of the action, the claim was reduced to $13,558.31 by payments received on account of certain promissory notes which plaintiff had received from the defendant bank. The cause was tried to the court, sitting without a jury, findings were made and judgment was ordered in favor of the plaintiff. From an order denying their motion for a new trial, defendants appealed.

Subsequent to the commencement of the action, A. J. Viegel, State Superintendent of Banks, took possession of the defendant bank because of its alleged insolvency and thereupon was made a

[1]Reported in 206 N. W. 708.

party defendant herein, but, in referring to the defendant herein, reference will be to the defendant bank only. The vital question to be determined in this litigation is as to the ownership of the promissory notes, held by the plaintiff, which it received from the defendant.

Prior to March 1, 1919, J. V. Williams, president of the plaintiff bank, and A. M. Moore, cashier of the defendant bank, had a conversation relative to the two banks opening up an account for the benefit of both banks. The plaintiff had a surplus of cash, a portion of which it wished to invest in paper drawing a fair rate of interest. The defendant had a large amount of such paper, but was short of ready money. An understanding was arrived at between the two men.

On February 27, 1919, Moore wrote a letter to the plaintiff, inclosing 6 promissory notes, of the face value of $21,108, executed by customers of the defendant bank, residing in the vicinity of Balaton, which defendant indorsed without recourse, stating in the letter "you may credit our account with this amount, and we will try and leave this balance with you as long as we possibly can. The agreement was that you were to take these notes at 7% from the day you received them. You may draw up a guaranty for us to sign, covering all notes we send you, as we have indorsed these notes without recourse." By the talk, plaintiff was to carry the paper for the defendant at 7 per cent and to allow defendant 3 per cent on daily balances on its checking account. On March 8, 1920, defendant furnished to plaintiff a written guaranty of payment of the notes, signed by the president, cashier and the assistant cashier of the defendant. The amount of the face of the notes was then placed to the credit of the defendant, subject to check, and was thereafter checked out as defendant saw fit. From time to time thereafter, the defendant sent other notes to the plaintiff which were handled in substantially the same manner. In reply to the letter written by Mr. Moore, in which he inclosed the 6 notes referred to, the plaintiff, through its president, says: "Your understanding of the agreement is correct. Namely, we to carry these

notes at 7% for the time that we hold them. You also understand, of course, that we are saving you 3% on daily business. I trust this account may prove profitable to the both of us."

Shortly thereafter, plaintiff requested a new guaranty, signed by the directors of the defendant, as individuals. The request was complied with. Later on another guaranty was requested and furnished, signed by the same persons as individuals, and still later another guaranty was requested and the one set forth in the record, dated May 2, 1922, signed by the same individuals, was furnished. As the several new guaranties were furnished, the old ones were returned canceled. The credits given defendant's account were always the same, in amount, as the face of the notes delivered at the time. The guaranty, dated May 2, 1922, is in form as follows:

> "Balaton, Minnesota,
> "May 2d, 1922.

"The First State Bank of Balaton, Minnesota, has heretofore negotiated the sale of various promissory notes and other securities to the Marshall State Bank of Marshall, Minnesota, and for the purpose of further securing the payment of said notes or obligations, the undersigned did execute an unconditional guaranty to said Marshall State Bank providing for the payment of any of said obligations at maturity.

"Owing to conditions it has been impossible to pay said notes when due and renewals have been accepted and further time granted where required.

"As of this date the said Marshall State Bank holds the following paper carrying the guaranty of the undersigned:  *  *  *

"Owing to the change of ownership and management of the said First State Bank of Balaton, this agreement is made for the purpose of modifying the conditions of the former guarantee to conform to the demands at this time.

"Now therefore, we the undersigned do hereby unconditionally guarantee the payment of the above described notes, jointly and severally, waiving notice and presentment for payment, and further guarantee the payment of any renewals of said notes, or paper sub-

stituted therefor, whether said notes are made payable to the order of said First State Bank of Balaton, and endorsed without recourse, or made direct to said Marshall State Bank.

"The said Marshall State Bank may renew or extend the time of payment of any of said notes, and accept such collateral or security as it may deem advisable from any of the makers or endorsers thereof, without in any way relieving the undersigned from the guarantee herein subscribed.

"We do further waive notice of non-payment, presentment, demand or notice of protest on any and all notes now or hereafter carried by said Marshall State Bank resulting from the agreement herein made, when any of said notes become due. The intent hereof being to unconditionally guarantee the payment of each and every obligation, whether paid by the maker at maturity or not.

"A. M. Moore.
"Chas. Germo.
"G. A. Reinke.
"J. H. Carlaw."

The trial court made findings that, shortly prior to March 1, 1919, plaintiff and defendant entered into an agreement whereby plaintiff undertook and agreed to loan, to the defendant, divers sums of money and, to secure payment of the same, defendant agreed to deposit and pledge with the plaintiff promissory notes, held and owned by it, in sums equal to the money so loaned, and, to further secure the payment of the money so loaned, to furnish to the plaintiff a written guaranty of the payment of the money loaned by plaintiff to the defendant.

We are unable to concur in the findings of the trial court to the effect that the notes in question were held by the plaintiff as collateral to a loan. A careful reading of the entire record convinces us, beyond question, that the transaction was the usual discounting and sale of certain promissory notes by one bank to another. It is undisputed that the notes were the obligations of persons residing in the vicinity of the defendant bank; that they were made payable

to the order of the defendant and indorsed by it, without recourse; that payment of the same was secured by guaranties of the directors, as individuals; that they were carried on the books of the plaintiff as assets of that institution; that no note or other evidence of any indebtedness was ever executed by the defendant to plaintiff; that, in its reports to the banking department, plaintiff reported these notes as assets and not as collateral security; and that the defendant never carried any of them upon its books as a part of its assets. When Mr. Moore sent the first batch of notes to the plaintiff, he wrote as follows: "You may draw up a guaranty for us to sign, covering all notes that we sent you, as we have indorsed these notes without recourse." The first paragraph of the guaranty, dated May 2, 1922, is as follows:

"The First State Bank of Balaton, Minnesota, has heretofore negotiated the sale of various promissory notes and other securities to the Marshall State Bank of Marshall, Minnesota, and for the purpose of further securing the payment of said notes or obligations, the undersigned did execute an unconditional guaranty to said Marshall State Bank providing for the payment of any of said obligations at maturity."

A majority of the court are of the opinion that the transaction amounted, as a matter of law, to a discount and sale of the notes and that the plaintiff is not entitled to recover in this action. The writer and Mr. Justice Stone do not concur in that view of the case, but are of the opinion that the findings and conclusions are so manifestly against the weight of evidence that a new trial should be had.

Reversed.