## LOUISA SOMMERFELD v. C. D. GRIFFITH AND ANOTHER.[1]

November 25, 1927.

No. 26,396.

**Findings of fact sustained by evidence.**

    1. The assailed findings of fact are supported by the evidence.

**When wife's signature to deed of her property may be avoided.**

    2. Where the officers of a bank, discovering the cashier's forgeries of the bank's bills receivable, seek to ·retrieve the loss by procuring a conveyance of his wife's real estate, including the homestead, and intrust such procurement to the husband, he becomes their agent, so that if the wife's signature to the conveyance is obtained by the fraud and misrepresentation of the husband it may be avoided by her.

**Hearsay—privileged communication.**

    3. The testimony of the wife and husband as to what was said and done in procuring her signature was not hearsay. The statute pro-

[1]Reported in 216 N. W. 311.

tecting as privileged communications between husband and wife could not be invoked by defendants.

**Exclusion of testimony sustained.**
    4.  No error in the exclusion of the immaterial testimony as to the amount of the wife's inheritance from her father.

Agency, 2 C. J. p. 856 n. 63, 65.
Appeal and Error, 4 C. J. p. 1005 n. 68.
Deeds, 18 C. J. p. 231 n. 91, 97; p. 232 n. 13; p. 447 n. 46; p. 448 n. 48.
Evidence, 22 C. J. p. 216 n. 58.
Quieting Title, 32 Cyc. p. 1370 n. 16; p. 1372 n. 24.
Witnesses, 40 Cyc. p. 2394 n. 36.

See note in 4 A. L. R. 868; 19 R. C. L. 297; 3 R. C. L. Supp. 929.

Defendants as trustees of the State Bank of Echo appealed from a judgment of the district court for Yellow Medicine county, Baker, J. Affirmed.

*William Furst,* for appellants.
*Daly & Barnard,* for respondent.

HOLT, J.

Action to determine adverse claims of defendants to real estate in the possession of plaintiff. Findings in her favor, and appeal by defendants from the judgment.

The evidence developed that in 1900 and 1906 plaintiff acquired the title to four lots in Echo, Minnesota, and to an adjacent piece of unplatted land of 350 feet by 300 feet in area. Some 16 years ago a dwelling was erected upon the lots, which ever since has been the homestead of plaintiff and her family. Her husband, F. W. Sommerfeld, had been cashier of the bank at Echo for over 24 years, when, in August, 1924, it was discovered that he had forged paper or bills receivable held by the bank causing it a loss of more than $32,000. Defendants were officers of the bank and naturally pressed Sommerfeld to make good the loss so far as means within his control would go. And on August 28, 1924, a deed was procured from

plaintiff and her husband to the property above mentioned to defendants as trustees, and solely upon that deed their adverse claim is based. There was no attempt to trace any of the funds of the bank into the purchase or improvement of the property deeded. The court made lengthy findings as to the facts and circumstances under which that deed was obtained and from which the conclusions were drawn that there was no consideration and that plaintiff's signature was secured by her husband's misrepresentation that the instrument was simply a paper necessary to sign in order to secure fire insurance. We shall first notice the assignments of error challenging certain findings of fact.

[1] There is no evidence contradicting plaintiff's testimony, even inferentially, that she knew nothing of her husband's wrongdoing or had any knowledge of any negotiations between her husband and defendants relating to the transfer of her property. Hence, the finding in accordance with her testimony must be sustained. The same must be held as to the finding that her husband obtained her signature to the deed by representing that the instrument was simply a paper needed in effecting insurance on the home. There was no evidence disputing the testimony of both plaintiff and her husband to that effect. The witnesses to the deed and the notary who certified to the acknowledgment were not present when plaintiff signed. In fact, plaintiff testified she did not learn of her husband's wrongdoing or that the papers she had signed were deeds until more than two months after August, 1924. The court found that plaintiff remained in possession and has at all times refused to recognize defendants' rights to the premises. Error is assigned upon the last clause of the finding. True, there is no direct evidence as to such refusal. But it is undisputed that she remained in possession, and there is no evidence that defendants ever demanded possession or sought to assert rights under the deed until the answer herein was interposed. So far as the above assailed findings are upon material facts they are amply sustained.

In what the court includes in the conclusions of law, error is assigned upon that part which finds that plaintiff is the owner of

the premises. That conclusion depends upon the invalidity of the deed to defendants. It cannot be disputed upon the findings and the evidence that the signature of plaintiff was obtained by her husband's fraud and misrepresentation. It is clear that she was not a woman of any business ability. She believed what her husband told her and signed such papers as he desired her signature upon. Her health was poor and her sight failing. Defendants were informed of plaintiff's ownership of the property they sought to acquire and knew that it was the family homestead. She was not present at the negotiations had with the husband, and defendants had no reason to assume that she knew of her husband's wrongdoing. No matter how worthy defendants' motives in seeking to obtain all they could from the wrongdoer to lessen the bank's loss, prudence ought to have suggested that before accepting a deed from the wife of her property, and that the homestead, they make sure that she executed the deed as her free act with knowledge that it was a deed. They could not rely upon the acknowledgment, if the testimony of the notary, plaintiff's son, is true (and defendants did not contradict him), that he took the acknowledgment without plaintiff's being present or appearing before him. This testimony went in without objection. Plaintiff also testifies that she did not appear before the notary to acknowledge the deed.

[2] There is no direct finding that in procuring plaintiff's signature to the deed F. W. Sommerfeld was the agent of defendants, but this is necessarily implied from the circumstances. The property defendants sought to procure to apply upon a past due obligation of the husband belonged to the wife; the deed thereto was prepared in the presence of defendants; and they acquiesced in his leaving the bank for her home to procure her signature. It was brought back and accepted, lacking due acknowledgment to their knowledge. They were not innocent purchasers in the ordinary sense for a consideration then parted with. And we think it permissible for plaintiff to establish that her signature to the deed was obtained by the misrepresentation of the one whom defendants availed themselves of to secure her property. They should not

profit by his further wrong. They knew of his disposition in that direction. We are well aware that an innocent purchaser for value is protected under the rule that as between the husband and wife, grantors, the one is the agent of the other and not of the grantee so that the latter cannot be charged with the consequences of misrepresentation, fraud or duress perpetrated by the one spouse upon the other in securing his or her signature to a deed. The authorities are collected in the note to Smith v. Commercial Bank, 77 Fla. 163, 81 So. 154, 4 A. L. R. 862. It is to be noted, however, that where a person is induced by fraud and misrepresentation to affix his signature to an instrument of an entirely different sort than that represented, he is not bound thereby unless estopped by negligence or otherwise. The following cases support plaintiff on the proposition that her husband might be considered the agent of defendants in the procurement of her signature to the deed. Central Bank of Frederick v. Copeland, 18 Md. 305, 81 Am. D. 597; Edwards v. Boyd, 77 Tenn. 204. The syllabus in the last cited case reads:

"Where the husband procures his wife's conveyance to homestead, or to her lands, to secure a pre-existing debt of his, he will be regarded as the agent of the creditor, who will be bound by the husband's actions."

In the opinion it is said [at p. 207]:

"In one of such delicacy as this, guarded by our law with such care, and subject to so much abuse in case of husbands distressed and harassed by debt, perfect fairness—at any rate, common prudence would demand that the creditor himself (where it can be done), should, in a case like this, see the wife, and know that she assents to the contract he is making with her. He must either do this or communicate with her by some other means, and if he chooses the husband as that means of communication, he must, in common fairness, do so at the peril of being responsible for his conduct of the business, as in other cases of agency."

In the Maryland case the court says [18 Md. 305, 319]:

"The fact that McPherson and Thomas, personally, took no active part in procuring the execution of the mortgage by Mrs. Copeland,

does not strengthen their right to set it up as a valid deed, nor does it impair her right to avoid it. Its execution was procured by the husband, acting in their interest and for their benefit, and as their acceptance of the mortgage implies an adoption of his agency, they can have no right to enforce it, free from infirmities originating in this use of unconscionable means to compel its execution"—in that case duress.

The court's conclusion that there was no consideration for the deed is erroneous. There was no consideration moving to plaintiff; but there was consideration in the pre-existing obligation of her husband. However, no direct attack is made upon that conclusion, and it would avail nothing, for the finding that plaintiff's signature was obtained by means of false and fraudulent misrepresentations of defendants' agent or of the one whose services they availed themselves of is sufficient to support the decision annulling the deed.

[3] In the light of the foregoing conclusions it is palpable that the testimony as to what was said and done when Sommerfeld induced his wife to affix her signature to the deed was not hearsay. Of course defendants had no right to object on the statutory ground of privileged communication between husband and wife.

[4] There was no attempt to trace any of the bank's funds into the property here involved. Plaintiff testified to money received from her father during his lifetime that was used to pay taxes and perhaps to help erect the home. The father died about six years before the transaction here in question. And a question as to the amount of her share in his estate was excluded on plaintiff's objection. This ruling is assigned as error. No inquiry was made as to what had been done with this inheritance. Large or small, it had nothing to do with this case or the property.

Two deeds were given on August 28, 1924, by plaintiff to defendants. The one overlaps part of the land conveying the homestead and covers an additional strip adjacent thereto on the west. This additional strip was not claimed in the complaint. No title thereto was admitted or proved in plaintiff, nor was there a finding that plaintiff was the owner thereof. Nevertheless the deed conveying

that and also a part described in the homestead conveyance was canceled. Such deed in so far as it did not cover the land claimed in the complaint and described in the order for judgment ought not to be canceled. The trial court has not been requested to modify the conclusion of law in that respect.

The judgment is affirmed, but without prejudice to an application to the trial court to modify the cancelation of the deed conveying a strip on the west side of the land described in the instrument conveying the homestead.