IN RE APPLICATION OF BESSIE YESNES AND JUSTIN D.
HALPERN, AS ADMINISTRATOR *d. b. n.* OF ESTATE OF
MAX COOPER, TO REGISTER TITLE TO LAND.
RACHEL COOPER, APPELLANT.[1]

January 11, 1952.

No. 35,485.

*Charles M. Bank,* for appellant.

*George N. Guttmann, Eugene L. Heck,* and *Justin D. Halpern,*
for respondents.

MATSON, JUSTICE.

In proceedings for the registration of title to land, the widow
of the decedent owner, as an answering defendant, appeals from a
judgment decreeing that the heirs or devisees of the decedent are
the owners in fee simple.

Appellant contends that she, as a surviving joint tenant, is the
sole owner of the property.

In January 1942, Max Cooper, now deceased, purchased lot 6,
block 7, Oak Park Addition to Minneapolis, on a contract for deed.
He was the sole vendee. On April 2, 1942, Max, accompanied by the
appellant herein, called on his attorney and informed him that he
and the appellant—hereinafter called Rachel—were engaged to be

[1]Reported in 51 N. W. (2d) 67.

married, and that he wished to have papers prepared for the placing of the above property in joint tenancy with his prospective bride. Appropriate quitclaim deeds and assignments of contract were drawn whereby Max conveyed his interest in the property through a third party as a conduit to himself and Rachel as joint tenants. Immediately after the four instruments had been executed, Max took personal possession of them. When Rachel asked for the instruments, he told her not to worry because after they were married, and if she turned out to be a good wife, she would have what he had. They were married on April 17, 1942.

In 1943 Max employed an accountant to prepare his tax return. In the presence of Rachel, he told the accountant that the property belonged to him alone and that he wanted it that way.

On May 6, 1946, Max, accompanied by his accountant and also by Rachel, again went to the office of his attorney to inquire about the title, because he was then ready to pay the balance due on the contract of purchase. His attorney asked him what had happened to the quitclaim deeds and the assignments, because they did not appear of record. Max answered that he still had them and that they were his. He then told Rachel that she would not get them unless she treated him right, and that he would keep the papers until he thought she was entitled to them. When the attorney told Max that if he wanted to get a mortgage on the premises his wife, Rachel, would have to sign the papers, Max became angry and said:

"This is my property. I don't see why she has to have anything to do with signing the mortgage."

Pursuant to his professional employment, the attorney procured a deed from the contract vendors which conveyed the premises to Max as sole grantee. This deed was recorded on May 20, 1946.

On June 17, 1946, in a divorce action then pending between the parties, Rachel executed an affidavit to the effect that she was destitute *and had no property.*

In contradiction of the above evidence, Rachel testified that she was given possession of the deeds when they were first executed, and that she at all times retained possession of them, but that she

did not recall who had filed them. The records of the register of deeds of Hennepin county show that the quitclaim deeds were filed June 13, 1946. Max died January 22, 1947.

Upon this conflicting evidence, the trial court specifically found that the two deeds had never been delivered by Max. This finding is sustained by a clear preponderance of the evidence. It is elementary that an undelivered deed conveys no title. 2 Dunnell, Dig. & Supp. § 2662. It follows that no joint tenancy was created in the property. Furthermore, there is no evidence of fraud or of any violation of the fiduciary relation as a basis for establishing a constructive trust in appellant's favor.

The judgment of the trial court is affirmed.

Affirmed.