412

E. A. FENRICK, ADMINISTRATOR OF ESTATE OF
MYRON C. GILMAN, AND OTHERS v. LILLIAN OLSON
AND OTHERS.

131 N. W. (2d) 235.

November 6, 1964—No. 39,100.

*Brehmer & McMahon,* for appellant.
*Emmett F. Tighe,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by the administrator of the estate of Myron C. Gilman, deceased, and by Harriet L. Gilman, widow; and Jean Beckland, Dana Gilman, and Warren P. Gilman, children of deceased, against defendant Lillian Olson to cancel two quitclaim deeds executed on September 6, 1960, by decedent and Harriet L. Gilman, his wife, in which defendant was named as grantee.[1] Upon special findings of the jury and additional findings by the court, judgment was ordered can-

---

[1]There were additional defendants who are not involved in this appeal. For convenience, Lillian Olson will be referred to as defendant. Harriet L. Gilman will be referred to as plaintiff.

celing the deeds and this is an appeal from the judgment entered pursuant thereto.

Plaintiff's action for cancellation of the deeds is based upon the grounds (1) that Harriet L. Gilman at no time received any consideration for her execution thereof or the conveyance of the property described therein; (2) that at the time she executed the deeds she did not know or understand that they conveyed her interests in the property to defendant; (3) that she had been induced by the fraud and concealment of her husband to execute them; and (4) that the deeds never having been delivered, they had not divested the Gilmans of title to the property at the time of the death of Myron C. Gilman on November 2, 1961.

The first quitclaim deed, dated July 1, 1960, purported to convey to defendant an 80-acre tract in Watonwan County described as follows:

"The South Half (S½) of the Southeast Quarter (SE¼), Section Thirty (30), Township One Hundred Five (105), Range Thirty (30), Watonwan County, Minnesota."

The second quitclaim deed, dated July 12, 1960, purported to convey to defendant a 48.5-acre tract in Martin County described as follows:

"Lot One (1), Section Six (6), Township One Hundred Four (104), Range Thirty (30), Martin County, Minnesota, containing 48.5 acres more or less."

On September 6, 1960, the two deeds were executed and acknowledged by the Gilmans before E. W. Heck, a notary public in Buffalo County, Wisconsin, where the Gilmans resided. Thereafter they were never delivered to defendant. At the time of the execution of the deeds, title to the 48.5 acres in Martin County was in Myron C. Gilman and Harriet L. Gilman, husband and wife, as joint tenants; and title to the 80 acres in Watonwan County was in the name of Myron C. Gilman alone. The two tracts were adjacent to each other and with the north half of the southeast quarter of section 30, township 105, range 30, Watonwan County, were operated as a single farm.

On November 4, 1960, at the request of Mr. Gilman, defendant executed and delivered to him a power of attorney with respect to the tracts described in the two quitclaim deeds which empowered him as follows:

"To enter into and upon all and singular of the above described real estate, and to let, manage and improve the same or any part thereof, and to repair or otherwise improve or alter, and to insure the buildings thereon.

"To borrow money and make, execute, sign and deliver mortgages of real estate to the above described premises, now owned by me and standing in my name and to make, execute, sign and deliver any and all promissory notes necessary in the premises.

"To grant, bargain and sell the above described premises, or any part thereof, for such price, and on such terms, as to him shall seem meet, and for me and in my name, to make, execute, acknowledge and deliver, good and sufficient deeds and conveyances for the same, either with or without covenants and warranty.

"Granting and giving unto said Attorney in Fact full authority and power to do and perform any and all other acts necessary or incident to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized hereby as fully to all intents and purposes as the grantor might or could do if personally present, with the full power of substitution."

This power of attorney was never recorded but was retained by Myron C. Gilman throughout his lifetime. While the two deeds and the power of attorney were still in his possession, two contracts for the sale of the entire farm to Loren G. Wessel were executed and delivered as follows:

On October 16, 1961, in Mondovi, Wisconsin, Myron C. Gilman and Harriet L. Gilman, his wife, executed a contract under which they agreed to sell and convey to Loren G. Wessel the entire southeast quarter of section 30, township 105, range 30, Watonwan County, upon payment of the purchase price in accordance with terms set forth in such contract. (This included the south half of this quarter

section, which was the subject of the first quitclaim deed above described.)

On October 16, 1961, in Mondovi, Wisconsin, Myron C. Gilman, as attorney in fact for Lillian Olson, executed a contract under which Myron C. Gilman, as attorney in fact for Lillian Olson, agreed to sell and convey to Loren G. Wessel the 48.5 acres in Martin County upon payment of the purchase price in accordance with terms set forth in such contract. (This was the tract which was in the name of Myron C. Gilman and Harriet L. Gilman as joint tenants.)

On October 20, 1961, Mr. Gilman, accompanied by defendant, took the two contracts described to the Minnesota farm where Mr. Wessel, who was then a lessee thereof, was working. All three then drove to Truman, Minnesota, where Mr. Wessel executed and acknowledged the contracts before a notary public. An executed copy of both such contracts was then delivered to him. On the same date, Mr. Gilman, accompanied by defendant, drove to Fairmont, the county seat of Martin County, where the quitclaim deed to defendant on the Martin County land and the contract for deed to Wessel were recorded at 1:50 p. m. Mr. Gilman and defendant then returned to Wisconsin. On November 1, 1961, Mr. Gilman, unaccompanied by defendant, drove to St. James, Minnesota, the county seat of Watonwan County, and at 4:30 p. m. that date recorded the quitclaim deed covering the 80-acre tract in Watonwan County. At the same time he paid the registration tax on the contract for deed to Wessel on this tract, but did not record it. He then returned to Wisconsin, where he died the following day, November 2, 1961. At the time the deeds and the contract for deed were recorded as above described, written instructions were placed thereon which directed the register of deeds to return them to Myron C. Gilman in Mondovi, Wisconsin. Shortly after his death, both deeds and the power of attorney were found in his briefcase.

Defendant was permitted to testify that when Mr. Gilman came out of the courthouse at Fairmont he told her "he had recorded those papers for that land that should be mine" and that "he also said he had my name on the land where the buildings were on when he came

back to the car from the courthouse." She testified also that "he had mentioned the 48½ acres"; "he wanted me to have that" because "I had always been good to him."

Harriet L. Gilman testified that at the time she signed and acknowledged the deeds she had been entirely unaware of their nature; that neither their contents nor their effect had ever been explained or disclosed to her; that she had been taken by her husband, in whom she imposed her trust and confidence, to the bank in Mondovi, Wisconsin, to sign some "papers"; that she had then gone to a window in the bank where some papers, which were folded, had been presented to her and which she had then signed without reading them or having their contents read to her. She testified further that at no time until subsequent to the death of Mr. Gilman was she aware that these papers had been deeds conveying to defendant all her interests in the lands described therein.

The record also reveals that Mrs. Gilman was 71 years of age and had had little if any business experience involving real property or otherwise at the time she signed the deeds; that no consideration of any kind was ever paid to her therefor; and that her husband had paid defendant in full for certain bookkeeping services she had performed for him in connection with his duties as an assessor in Franklin Township, Wisconsin, and for board and room that she had furnished him.

Mrs. Gilman testified that at the time she executed the contract for deed in favor of Mr. Wessel on October 16, 1961, she was aware that the farm was being sold to him and that she had executed the contract with the understanding and belief that she then still owned the Martin County property jointly with her husband, and that she was selling all her interests in the entire farm to Mr. Wessel.

At the close of the trial, the court submitted special interrogatories to the jury which were answered as follows:

"Did Mrs. Harriet Gilman understand when she signed Deed No. 1 that she was signing a Deed and conveying her interest in the land in Martin County (Lot 1, Section 6, Township 104-30) in question?
"No.

"Did Mrs. Harriet Gilman understand when she signed Deed No. 2 that she was signing a Deed and conveying her interest in the land in Watonwan County (S½ of SE¼, Section 30, Township 105-30) in question?

"No.

"Did the deceased, M. C. Gilman, intend to divest himself of his entire interest as owner when he placed Deed No. 1, to Lot 1, Section 6, Township 104-30 in Martin County on record in Martin County?

"No.

"Did the deceased, M. C. Gilman, intend to divest himself of his entire interest as owner when he placed Deed No. 2 to the S½ of SE¼ of Section 30, Township 105-30 in Watonwan County on record in Watonwan County?

"No."

The court adopted these findings and in addition found that there had been no consideration for the deeds; that they had never been delivered to defendant; and that no title had ever passed to her thereunder. It also determined that Harriet L. Gilman, as surviving joint tenant, was the owner in fee of the Martin County land and that it was not subject to the contract for deed in favor of Wessel; and that Myron C. Gilman at the time of his death on November 2, 1961, was the owner of the entire quarter section in Watonwan County but subject to the contract for deed in favor of Wessel.

On appeal defendant contends (1) that the evidence was insufficient to support the finding that Harriet L. Gilman was unaware that the deeds were intended to convey to defendant all her right, title, and interest in the real estate described therein; (2) that such a finding would not be sufficient to justify cancellation of the deeds; and (3) that the evidence did not overcome the presumption that Myron C. Gilman had completed delivery of the deeds and of the transfer of his interests in the property to defendant when he caused the deeds to be recorded before his death.

■ The principles applicable in situations of this kind have been

expressed in 13 Am. Jur. (2d) Cancellation of Instruments, § 21, as follows:

"* * * [W]here a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case." Citing Kronmeyer v. Buck, 258 Ill. 586, 101 N. E. 935; Davis, Executor, v. Hurlburt, 194 Ore. 584, 242 P. (2d) 784; Jackson v. Seymour, 193 Va. 735, 71 S. E. (2d) 181.

Likewise, it is stated in 13 Am. Jur. (2d) Cancellation of Instruments, § 16:

"Not only fraudulent or unfair misrepresentation but also fraudulent or unfair concealment may be sufficient ground for cancellation of an instrument if the fact concealed from the party seeking such relief is material and one as to which there is a duty on the opposing party to disclose."

With respect to the execution of conveyances, this court has stated that the grantor must understand the nature and effect of what he is doing, McClean v. Meyer, 148 Minn. 337, 181 N. W. 917; Trost v. Brey, 156 Minn. 242, 194 N. W. 617; Sommerfeld v. Griffith, 173 Minn. 51, 216 N. W. 311; 3 Dunnell, Dig. (3 ed.) § 1185a; and that equity may require cancellation of an instrument for an entire lack of consideration therefor. Hatcher v. Union Trust Co. 174 Minn. 241, 219 N. W. 76; Yess v. Ferch, 218 Minn. 32, 15 N. W. (2d) 134. Likewise, it has frequently been held that fraud or concealment inducing the execution of a deed or other instrument by one who, because of inexperience or ignorance, lacks understanding of its nature may justify its cancellation where no prejudice results, Yess v. Ferch, *supra*; Gaetke v. The Ebarr Co. Inc. 195 Minn. 393, 263 N. W. 448; Peterson v. Schober, 192 Minn. 315, 256 N. W. 308; McClean v. Meyer, *supra*; Sommerfeld v. Griffith, *supra;* Johnson v. Velve, 86 Minn. 46, 90 N. W. 126; Adolph v. Minneapolis & P. Ry. Co. 58 Minn. 178, 59 N. W. 959; that even in the absence of fraud the unilateral mistake of a party to a contract may justify its rescis-

sion or cancellation where no prejudice other than the loss of the bargain will result to the other party thereto, Olson v. Shephard, 165 Minn. 432, 206 N. W. 711; Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741; Thwing v. Hall & Ducey Lbr. Co. 40 Minn. 184, 41 N. W. 815; Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; Benson v. Markoe, 37 Minn. 30, 33 N. W. 38; and that the negligence of a maker of an instrument may not be decisive against granting relief by its cancellation in equity. Gethsemane Lutheran Church v. Zacho, 258 Minn. 438, 104 N. W. (2d) 645; Olson v. Shephard, *supra*; Peterson v. First Nat. Bank, *supra*; Annotation, 59 A. L. R. 809; 5 Williston, Contracts (Rev. ed.) §§ 1578, 1579, 1596; McClintock, Equity (2 ed.) § 91.[2]

In all decisions on this subject the courts have recognized that the test of undue influence is its effect upon the person in question, giving consideration to his age, intelligence, health, and character. As stated in Kempf v. Ranger, 132 Minn. 64, 68, 155 N. W. 1059, 1061:

---

[2]The concurring opinion states that the "only grounds" for rescission advanced were Mrs. Gilman's repeated assertions that she did not know what was in the instruments, had not read them, and signed them without knowing they were deeds. This gives no weight to undisputed evidence that at the time she signed them she was then 71 years of age, inexperienced in business and real estate matters, and had acted therein at the request of her husband—in whom she reposed trust and confidence—without being advised by him or anyone else that these instruments were quitclaim deeds under which all of her interests in the farm were being conveyed to defendant without consideration. Dobbin v. Cordiner, 41 Minn. 165, 42 N. W. 870, 4 A. L. R. 333, and Gethsemane Lutheran Church v. Zacho, 258 Minn. 438, 104 N. W. (2d) 645, cited in the concurring opinion, have reference to situations where third-party purchasers had parted with substantial sums for the property conveyed and where elements of estoppel accordingly were present. In both of these cases the grantors, seeking cancellation of a deed and contract for deed, had been fully aware of the nature and effect thereof at the time they signed them so that questions of fraudulent inducement or concealment were absent.

"* * * It is as much an actionable wrong to deceive the ignorant, the incompetent, the confiding, the gullible and the credulous with an improbable falsehood, as it is to deceive the average man with a plausible one. * * * The question is not whether the representations would deceive the average man. It is a question whether they were of such a character and were made under such circumstances that they were reasonably calculated to deceive the plaintiff * * *; and the diligence and prudence that is required is such as may reasonably be expected of a person of the intelligence and capacity of the person seeking the relief."

See, also, Leuba v. Bailey, 251 Minn. 193, 203, 88 N. W. (2d) 73, 80; In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90.

■ Here there can be little question but that the evidence is adequate to support the finding that Harriet L. Gilman had been unaware that she was signing the quitclaim deeds or of their effect and that there was a complete lack of consideration for her execution of them. It is undisputed that she received nothing for either her title or her statutory interest in the Martin County tract, or for her statutory interest in the Watonwan County land. At the time she signed the deeds a fiduciary relationship existed between her and her husband. State ex rel. Minn. L. & T. Co. v. Probate Court, 129 Minn. 442, 446, 152 N. W. 845, 846, L. R. A. 1915E, 815. She was then 71 years of age and inexperienced in real estate and business transactions. She was not permitted to view the two deeds as she signed them and she testified that at that time she lacked any information or knowledge that the effect thereof was to convey to another all of her interests in the farm. Such facts are ample justification for the trial court's action in adjudging the deeds void as to her and in directing their cancellation in the hands of defendant, who had paid nothing for them.

■ With respect to decedent, the evidence clearly sustains the conclusion that the transfer of his property to defendant was incomplete because of his failure to deliver the deeds to her and because of his intent not to divest himself of ownership of the property during his lifetime. The record establishes definitely that after the deeds were

executed he retained them in his possession until they were recorded just prior to his death. In addition he retained the power of attorney from defendant which empowered him to execute conveyances, leases, mortgages, and other documents with respect to the property as though he were the owner thereof. It is obvious that had he exercised his powers thereunder he could have completely nullified the effect of the two deeds even after they had been recorded. Further, after executing the deeds he continued to operate the property as its owner. Thus he leased the farm, collected rentals therefrom, executed the contracts for deed for its sale, and listed it as a personal asset in his application for a loan from the bank in Truman. His recording of the two deeds would not be inconsistent with his intent to continue ownership of the property as long as he retained the power of attorney described. Thus in Babbitt v. Bennett, 68 Minn. 260, 261, 71 N. W. 22, the court stated:

"* * * Plaintiff continued in the actual possession and occupancy of the premises as owner precisely as before the deed was executed. Mrs. Bennett never asserted any right to the property under the deed, and after plaintiff secured a divorce from his wife she, at his request, without objection, executed an instrument purporting to reconvey the premises to him; but, her husband having refused to join in the execution of the deed, the plaintiff brought this action to have the deed * * * and the record thereof canceled, alleging, among other things, that the deed had never been delivered. * * *

* * * * *

"* * * Delivery is a question of fact, and is mainly and primarily one of the intention of the grantor. The delivery of a deed is complete only when the grantor has put it beyond his power to revoke or reclaim it. The important question in determining whether there has been a delivery is the intent of the grantor that the instrument shall pass out of his control, and operate as a conveyance. The existence or nonexistence of this intent, however, must be determined from his acts, and not from some secret state of mind inconsistent with his conduct. * * *

"A delivery may be inferred from the fact, among others, that

after the instrument was completed the grantor filed it for record. But this is not conclusive evidence of a delivery. Recording alone does not constitute a delivery; and generally it may be said that the recording of a deed by the grantor, without the knowledge of the grantee, without other circumstances, does not amount to a delivery."

See, also, In re Application of Yesnes to Register Title to Land, 235 Minn. 356, 51 N. W. (2d) 67; Wortz v. Wortz, 128 Minn. 251, 150 N. W. 809; Hooper v. Vanstrum, 92 Minn. 406, 100 N. W. 229; 5 Dunnell, Dig. (3 ed.) § 2668. It has frequently been held that whether the grantor in a deed intended to divest himself of ownership is a question of fact, Dempsey v. Meighen, 260 Minn. 206, 109 N. W. (2d) 317; Slawik v. Loseth, 207 Minn. 137, 290 N. W. 228; Barnard v. Thurston, 86 Minn. 343, 90 N. W. 574; and here the evidence amply supports the jury's finding that Mr. Gilman had never intended to divest himself of title to or ownership of the property even though he had recorded the quitclaim deeds. Defendant's testimony[3] that when the deed on the Martin County tract was recorded he had told her that he wanted her to have the property would not be conclusive as to when he intended such ownership to take effect. At best it would be but one factor for the jury's consideration in determining the question of his intent with respect thereto.

The trial court's determination that the Martin County tract was not subject to the contract for deed in favor of Mr. Wessel would appear inconsistent with the testimony of plaintiff that in executing the contract for deed to Wessel she had intended thereby to sell to him all her ownership and interests in the entire farm and should not foreclose him in any future action he may bring for reformation of the contract for deed to conform to the intent of the parties thereto.

Affirmed.

OTIS, JUSTICE (concurring specially).

I have no quarrel with the court's holding that these conveyances

---

[3]As to this testimony, plaintiffs waived any objections that they might have thereto under Minn. St. 595.04.

fail for want of consideration. However, I cannot agree that the deed signed by Mrs. Gilman may be rescinded for fraud. There is no evidence whatever that the contents of these instruments were misrepresented to Mrs. Gilman by her husband or by anyone else. She executed the instruments in the presence of two witnesses and acknowledged them before a notary public, none of whom appeared at the trial to dispute the recitations in the acknowledgment that she signed them as her free act and deed. The only grounds for rescission were her repeated assertions that she didn't know what was in the instruments, hadn't read them, and signed them without knowing they were deeds. To hold that these circumstances give rise to an equitable action for rescission is not supported by any authority which has come to my attention. Our own decisions would appear to reach a contrary conclusion, at least with respect to innocent purchasers. In Dobbin v. Cordiner, 41 Minn. 165, 42 N. W. 870, 4 L. R. A. 333, we held that the wife executing a deed under similar circumstances was estopped to assert its invalidity where she claimed she signed it when the description and the name of the grantee had not been inserted.

In my opinion the issue of fraud is governed by the rule we stated in Gethsemane Lutheran Church v. Zacho, 258 Minn. 438, 442, 104 N. W. (2d) 645, 648, where we said:

"* * * To justify a court in reforming, or rewriting, a contract, there must be clear and convincing evidence, beyond a mere preponderance, of mutual mistake or of mistake by one induced or known to, and taken advantage of by, the other contracting party. The most that can be said for appellant's evidence is that it suggests that the Zachos either were ignorant of or misunderstood the provisions of the contract. There is not a scintilla of evidence that anyone induced them to execute the contract by misrepresentation or knew and sought to take advantage of any misunderstanding that they may have had as to the contract. Thus there is no showing to justify reformation of the contract."

Authorities are collected in Goodson & Koski v. Smith, 69 Wyo. 439, 460, 243 P. (2d) 163, 172; 13 Am. Jur. (2d) Cancellation of In-

struments, § 34; Annotation, 59 A. L. R. 818; 3 Dunnell, Dig. (3 ed.) § 1197. Our holding that under the circumstances recited a deed may be rescinded for fraud in my opinion puts a premium on ignorance and will inevitably discourage parties to deeds and contracts from reading and understanding the contents of the obligations they are undertaking.

ROGOSHESKE, JUSTICE (concurring specially).
I agree with the views expressed by Mr. Justice Otis.

NELSON, JUSTICE (concurring specially).
I agree with the views expressed by Mr. Justice Otis.