**WESTERN FIRE TRUCK, INC.,**
**Plaintiff–Appellee and**
**Cross–Appellant,**

**v.**

**EMERGENCY ONE, INC., Defendant–**
**Appellant and Cross–Appellee.**

**No. 04CA1458.**

Colorado Court of Appeals,
Div. V.

March 23, 2006.

Hill & Robbins, P.C., Ronald L. Wilcox, Jennifer H. Hunt, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Faegre & Benson, LLP, Robert L. Matthews, Neal S. Cohen, Boulder, Colorado, for Defendant–Appellant and Cross–Appellee.

HAWTHORNE, J.

In this tort action, defendant, Emergency One, Inc. (E–One), appeals the trial court's judgment entered after the jury returned a verdict in favor of plaintiff, Western Fire Truck, Inc. Western cross-appeals the trial court's decision to vacate the jury's award of punitive damages. We affirm in part, reverse in part, and remand.

## I.  Background

E–One manufactures fire and rescue vehicles. Western was its exclusive dealer in Colorado and Wyoming pursuant to a sales and service agreement effective January 2000 through December 2003. However, in April 2002, E–One unilaterally terminated the agreement. At the same time, Western fired one of its salesmen, James Costello, after a Western manager discovered e-mails in which Costello had expressed his dissatisfaction with Western.

Subsequently, Western filed multiple claims against E–One and Costello, who is not a party to this appeal. E–One moved for judgment on the pleadings, asserting that Western's claims were barred by the economic loss rule. The trial court denied the motion, and Western proceeded to trial on claims for civil conspiracy, intentional interference with the employment relationship between Western and Costello, breach of fiduciary duty against Costello, and aiding and abetting this breach of fiduciary duty by E–One.

The jury returned a verdict in favor of Western on all claims and awarded actual damages of $280,000 against E–One and $70,000 against Costello. The jury also awarded Western punitive damages of $50,000 against E–One and $1 against Costello. The court entered judgment on the verdict and awarded Western costs of $36,992.31 and prejudgment interest of $53,200.

E–One moved for a new trial and judgment notwithstanding the verdict as to the punitive damages award, the aiding and abetting breach of fiduciary duty claim, and the intentional interference claim. The trial court vacated the award of punitive damages as not supported by the evidence. The court otherwise denied E–One's motion.

## II.  Marital Communications Privilege

E–One contends that the trial court erred in admitting certain e-mails between Costello and his wife and in allowing Western to

cross-examine Costello about those e-mails because they were protected under § 13–90–107, C.R.S.2005. We conclude that E–One lacks standing to raise this issue.

■ Statutory interpretation is a question of law that we review de novo. *Colo. State Bd. of Accountancy v. Paroske*, 39 P.3d 1283 (Colo.App.2001). We must first look to the plain meaning of the statute, and if the language is clear and the intent of the General Assembly may be discerned with certainty, we need not resort to other rules of statutory interpretation. *Samaritan Inst. v. Prince–Walker*, 883 P.2d 3 (Colo.1994).

Section 13–90–107(1), C.R.S.2005, which sets forth the marital communications privilege, provides in part:

> There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:
>
> (a)(I) [With an exception not relevant here] a husband shall not be examined for or against his wife without her consent nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage . . . .

Prior to trial, Costello moved to exclude all communications with his wife that were protected by the marital communications privilege. The trial court denied the motion, admitted the e-mails into evidence, and allowed Western to cross-examine Costello regarding them.

E–One contends that the e-mails were protected marital communications, and therefore, Costello could not be required to testify about those communications. However, we conclude that the marital communications privilege is personal to the spouses and may not be invoked by a third party.

As noted, the introductory language of § 13–90–107(1) states that "[t]here are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate." In *People v. Lucero*, 747 P.2d 660, 666 (Colo.1987)(quoting *Trammel v.*

*United States*, 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186 (1980)), the supreme court stated that the "privilege against adverse testimony by a spouse has continued to receive recognition in modern times because of 'its perceived role in fostering the harmony and sanctity of the marriage relationship.' " *See also Petro–Lewis Corp. v. Dist. Court*, 727 P.2d 41, 43 (Colo.1986)("The testimonial provisions of the marital privilege are designed to protect the sanctity and tranquility of the marital relationship from the disruption attendant to adverse spousal testimony.").

■ Accordingly, we conclude the language of the statute and the supreme court's interpretation of that language demonstrate that the purpose of the privilege is to protect spouses, not third parties. *See People v. Palomo*, 31 P.3d 879, 885 (Colo.2001)(recognizing that "[c]ourts routinely deny defendants the standing to assert a third party's right").

We are not persuaded otherwise by the opinions of other divisions of this court in *Stauffer v. Karabin*, 30 Colo.App. 357, 492 P.2d 862 (1971), and *People v. Covington*, 988 P.2d 657 (Colo.App.1999), *rev'd on other grounds*, 19 P.3d 15 (Colo.2001).

In *Stauffer*, the plaintiff attempted to invoke the physician-patient privilege on behalf of her mother to prevent the defendant physician from presenting testimony that would impeach the plaintiff, even though her mother was not a party to the lawsuit. The trial court overruled the objection and allowed the defendant to testify.

On appeal, the defendant maintained that his testimony was proper because the privilege was personal to the mother and, therefore, could not be invoked by the plaintiff. The division disagreed, concluding that "[w]here the patient is not a party to the action and is not present or represented by counsel in the courtroom, the mandate of the statute directs the court to enforce the privilege unless a proper waiver is obtained, or a party to the proceedings protects the privilege, as in the case before us." *Stauffer, supra*, 30 Colo.App. at 362, 492 P.2d at 864–65.

In *Covington,* the defendant was charged with second degree assault after he fired a shot which struck his wife. While treating the wife, a physician assistant photographed the wife's wounds. Prior to trial, the wife filed a motion in limine invoking her physician-patient privilege. However, the trial court allowed the physician assistant to testify as to the foundation for the admission of the photographs. Subsequently, a nontreating physician testified that based on the photographs, the actual wound caused serious bodily injury, a required element of second degree assault. The defendant moved to strike the physician assistant's testimony as violative of the wife's physician-patient privilege. The trial court denied his motion.

In reversing the defendant's conviction for second degree assault, a division of this court relied on *Stauffer,* concluding that the trial court had erred by not allowing the defendant to invoke the wife's physician-patient privilege. *Covington, supra.*

The supreme court granted certiorari review on unrelated issues. In a footnote, the supreme court observed that no one had raised the issue of whether the defendant had standing to invoke the privilege. *People v. Covington,* 19 P.3d 15, 19 n. 3 (Colo.2001). Although the court declined to address that issue, it cited four cases from other states which all held that the privilege was personal, and therefore, a defendant who was not the holder of the privilege lacked standing to raise it. *See Knight v. State,* 207 Ga.App. 846, 429 S.E.2d 326 (1993)(holding that the defendant had no standing to assert a privacy right in his wife's medical records); *People v. Wood,* 447 Mich. 80, 523 N.W.2d 477 (1994)(recognizing that Michigan courts have declined to allow litigants in civil cases to invoke the privileges of third parties); *Osborn v. Fabatz,* 105 Mich.App. 450, 306 N.W.2d 319 (1981)(same); *State v. Evans,* 802 S.W.2d 507 (Mo.1991)(holding that the defendant had no standing to object to the introduction of his girlfriend's medical records because the physician-patient privilege is personal to the patient).

Although the foregoing cases involved the patient-physician privilege, our conclusion that the marital communications privilege is personal to the spouses is supported by decisions from other courts. *See Sommerfeld v. Griffith,* 173 Minn. 51, 216 N.W. 311 (1927)(bank officials sued by wife whose husband had fraudulently persuaded her to convey property to them, may not invoke the statute protecting communications between husband and wife); *State v. Szemple,* 135 N.J. 406, 640 A.2d 817 (1994)(the marital communications privilege is personal to the spouses, and does not apply to third parties); *People v. Melski,* 10 N.Y.2d 78, 217 N.Y.S.2d 65, 176 N.E.2d 81 (1961)(spousal privilege belongs to the spouse against whom the testimony is offered); *Diehl v. Wilmot Castle Co.,* 26 Ohio St.2d 249, 271 N.E.2d 261 (1971)(statutory privilege is personal to husband and wife and may not be invoked by a third party).

■ We recognize that the circumstances presented here are more complex because Costello, the holder of the privilege, attempted to invoke its protection during trial. However, we nevertheless conclude that E–One lacks standing to raise this issue on appeal.

■ The supreme court has instructed that privileges must be strictly construed because they obstruct "the rightful search for truth." *Petro–Lewis Corp., supra,* 727 P.2d at 43; *see People v. Turner,* 109 P.3d 639 (Colo.2005)(privileges are creatures of statute that must be strictly construed because all privileges derogate the search for truth).

*Wigmore on Evidence* addresses the issue of a party's standing to assert a privilege on appeal if the trial court erroneously denied the holder's request for its application:

> If the ruling *denies the privilege* and compels the witness to testify, there is no legitimate ground for exception by the party against whom the evidence weighs. By hypothesis, the privilege does not exist for the benefit of the party nor for the sake of the better ascertainment of the truth of his cause. The offered testimony is relevant and is, in all other respects than the privilege, admissible. The admission of it, by denying the privilege, has not introduced material which in any way renders less trustworthy the finding of the verdict. On

the contrary, only the exclusion of it could have been an obstacle to the ascertainment of the truth. The only interest injured is that of the privileged person. His remedy—if, as is usually the case, he was a witness—was to refuse to obey and to appeal for vindication if the court had attempted improperly to use compulsory process of contempt.

8 *Wigmore on Evidence* § 2196(2)(a), at 112 (McNaughton rev. ed.1961); *see also Matthews v. McNeill,* 98 Kan. 5, 157 P. 387 (1916)(only the holder of the privilege or one in privity with him or her can found an appeal upon a violation of that privilege); *Wood, supra,* 523 N.W.2d at 482 (quoting *People v. Gallon,* 121 Mich.App. 183, 328 N.W.2d 615, 619 (1982))("the defendant lacked standing 'to either claim the privilege against self-incrimination for a witness or to complain about an error on the part of the trial judge in overruling the witness's attempt to assert it'"); *Martin v. State,* 203 Miss. 187, 33 So.2d 825 (1948)(same); *Torkelson v. Byrne,* 68 N.D. 13, 276 N.W. 134, 139 (1937)(quoting *Cloyes v. Thayer & Morse,* 3 Hill 564, 1842 WL 5105 (N.Y.1842))("If ordered to testify in a case where he is privileged, it is a matter exclusively between the Court and the witness. The latter may stand out and be committed for contempt, or he may submit; but the party has no right to interfere or complain of the error.").

We conclude this reasoning is in accord with the General Assembly's intent in creating the marital communications privilege to protect the marital relationship. *Lucero, supra.* E–One is not asserting error on appeal to protect the sanctity of Costello's marriage, but instead, to protect itself from civil liability. Thus, allowing E–One to object to the trial court's ruling on the privilege would in no way further the legislative intent underlying the privilege.

Accordingly, we decline to follow the divisions' decisions in *Stauffer* and *Covington,* insofar as they may be interpreted to apply to an issue involving the marital privilege, and we conclude that E–One lacks standing to appeal the trial court's ruling that the spousal privilege did not apply to preclude Costello's testimony regarding the e-mails.

*See In re Estate of Becker,* 32 P.3d 557 (Colo.App.2000)(divisions of this court are not obligated to follow the decisions of another division), *aff'd sub nom. In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

### III. Fiduciary Duty

E–One contends that the jury verdict finding it guilty of aiding and abetting Costello's breach of fiduciary duty must be set aside because there is no evidence in the record to prove that Costello owed Western a fiduciary duty. We disagree.

Regarding the existence of a fiduciary relationship, the trial court instructed the jury as follows:

A fiduciary relationship exists whenever one person is entrusted to act for the benefit of or in the interest of another and has the legal authority to do so.

If you find that Jim Costello was acting as an agent of Western with respect to his employment as a salesman of fire trucks, then you are instructed that Jim Costello was acting as a fiduciary of Western with respect to his employment by Western.

E–One did not object to this instruction in the trial court and does not contend on appeal that the instruction was erroneous. Accordingly, if the jury could have found that Costello was acting as an agent for Western, then it properly found that he owed Western a fiduciary duty.

■■■ "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his [or her] behalf and subject to his [or her] control, and consent by the other so to act." *Stortroen v. Beneficial Fin. Co.,* 736 P.2d 391, 395 (Colo.1987)(quoting Restatement (Second) of Agency § 1(1) (1957)). The existence of an agency relationship can be proved by the conduct of the parties. *Moses v. Diocese of Colo.,* 863 P.2d 310 (Colo. 1993). The control a principal exercises over the agent's work performance is evidence that an agency relationship exists. *Moses, supra.* However, the right to control, not the fact of control, is the relevant consideration. *Moses, supra.*

■ In addition, an agency relationship can exist even though the parties do not subjectively intend that legal consequences flow from their relation. *Stortroen, supra.* The critical determination is whether the parties materially agreed to enter into a particular relation to which the law of agency attached. *Stortroen, supra; see also City & County of Denver v. Fey Concert Co.,* 960 P.2d 657 (Colo.1998).

■ Whether an agency relationship exists is ordinarily a question of fact. *Stortroen, supra.* We will not disturb a jury's determination of a factual issue if the record reveals a reasonable basis to support it. *Moses, supra.*

Here, Western's president testified that he hired Costello as a salesman for Western and that Costello was assigned a particular customer base to call on to sell fire trucks. The record demonstrates that Costello had the authority to act on behalf of Western to order fire trucks for customers. The president also testified that he required monthly sales schedules from his salespersons, which detailed their sales activities and whereabouts each month. The president testified that Costello did not turn in the schedules on a regular basis, even though he was required to do so.

Costello testified that he reported to his immediate supervisor as well as to the president; that he understood that he had an obligation to be honest with Western and to disclose helpful information to it; and that he recognized an obligation not to disclose Western's confidential business information to third parties.

■ In considering the evidence in the light most favorable to the jury's verdict, we discern sufficient evidence from which the jury could have concluded that both Western and Costello intended Costello to act as an agent for Western and to be subject to its control. *See Stortroen, supra.*

E–One concedes in its brief on appeal that Costello was "subject to the control of his supervisors," and the testimony at trial established that, even if Costello failed to follow the rules set forth by the president, he was required to do so. *See Moses, supra*

(the right to control, not the fact of control, is the relevant consideration).

Accordingly, sufficient evidence in the record supports the jury's conclusion that Costello was acting as an agent for Western, and therefore, he owed Western a fiduciary duty. *See Moses, supra.*

### IV. Spoliation Instruction

■ E–One contends that the trial court erred in refusing to give a spoliation instruction because Western admitted having destroyed evidence after it filed the claims against Costello and E–One. We disagree.

■ Trial courts enjoy broad discretion to impose sanctions for spoliation of evidence. *Aloi v. Union Pac. R.R. Corp.,* 129 P.3d 999 (Colo.2006).

At trial, Western's president testified that he threw out certain documents regarding Costello's sales activity during the pertinent time period. He also testified that he did not intentionally throw the documents out because of the lawsuit.

Nevertheless, E–One contends that it was entitled to a spoliation instruction regarding this evidence because, contrary to Western's contentions, those documents might have shown that Costello's sales performance had not deteriorated in the months immediately prior to the termination of the contract.

However, it was within the trial court's discretion whether to credit the president's testimony that his act was unintentional. *See Anderson v. Hyland Hills Park & Recreation Dist.,* 119 P.3d 533 (Colo.App.2004)(the credibility of witnesses is within the discretion of the trial court, whose ruling will not be disturbed if the findings and conclusions are supported by the record).

Accordingly, we conclude that the trial court did not abuse its discretion in refusing to instruct the jury on spoliation. *See Pfantz v. KMart Corp.,* 85 P.3d 564 (Colo.App. 2003)(*cert.granted* Mar. 15, 2004.

### V. Economic Loss Doctrine

E–One contends that the trial court erred in denying its motion for judgment on the

pleadings because Western's claims for breach of fiduciary duty, civil conspiracy, and intentional interference with contract were barred by the economic loss rule.

■ However, an order denying a motion for judgment on the pleadings is not a final judgment subject to review. *Destination Travel, Inc. v. McElhanon,* 799 P.2d 454 (Colo.App.1990). To obtain appellate review of the issue involving the economic loss rule, E–One was required to preserve it. *See, e.g., Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996)(trial court's denial of a motion for summary judgment is not an appealable order; thus, party was required to preserve the issue for appellate review by raising it in a motion for a directed verdict or for judgment notwithstanding the verdict). Because E–One only raised the economic loss rule issue in its motion for judgment on the pleadings and not in any subsequent motion, we conclude that E–One abandoned the issue, and therefore, it may not be reviewed on appeal. *See Feiger, supra.*

## VI. Prejudgment Interest and Costs

Finally, E–One contends that the trial court awarded improper amounts to Western for prejudgment interest and costs. We agree and remand for further proceedings.

### A. Prejudgment Interest

■ E–One contends that the trial court incorrectly calculated the amount of prejudgment interest because a prevailing party can only recover prejudgment interest for lost profits which accrued in the past, and here, the court awarded interest on Western's damages that had not yet accrued. We agree that insufficient evidence was presented to support the trial court's calculation of prejudgment interest.

A prevailing party may recover prejudgment interest under § 5–12–102(1), C.R.S. 2005, which provides in part:

[With an exception not relevant here] when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

■ Prejudgment interest can only be awarded on past, not future, lost profits. *Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.,* 55 P.3d 235 (Colo.App.2002).

The jury awarded Western $350,000 in actual damages; $280,000 against E–One and $70,000 against Costello. In its motion for prejudgment interest, which the trial court granted, Western sought $53,200 in prejudgment interest; $42,560 against E–One and $10,640 against Costello. Western had calculated the interest at 8% per annum on the total actual damages of $350,000 from May 24, 2002, the date of the filing of the complaint, to March 23, 2004, the date of judgment. However, Western's expert did not testify that all $350,000 in damages had been incurred by May 2002.

At trial, Western's expert produced a chart to demonstrate the amount of damages that Western had suffered and would suffer each year from 2002 through 2009. The expert testified that the total amount of damages Western had suffered in 2002 was $108,354. Although the expert repeatedly testified that the conduct of E–One and Costello could have caused actual damages prior to 2002, she did not present any specific evidence of monetary loss before January 2002.

Consequently, the trial court erred in calculating prejudgment interest on the entire $350,000 starting in May 2002. *See Buckley Powder Co. v. State,* 70 P.3d 547 (Colo.App.2002)(damages must be supported by the evidence and may not be based on speculation or conjecture; interest is a component of a damage award).

Accordingly, we remand the case to the trial court to recalculate the award of prejudgment interest on the judgment entered against E–One based upon specific findings of when the actual damages were incurred.

### B. Costs

E–One contends that the trial court erred by including an assistant's fees in its award of costs for expert witness fees. We agree.

Section 13–33–102(4), C.R.S.2005, allows the award of expert witness fees as costs. However, fees for the expert's assistant should not be allowed because they are not authorized by the statute. *See Perkins v. Flatiron Structures Co.,* 849 P.2d 832 (Colo. App.1992).

In its motion for costs, Western sought $24,337.50 for expert witness fees. However, that total included $11,837.50 for the expert's fees and $12,500 for her assistant's fees.

In its order, the court found it was reasonable to reduce the amount requested by $8,000, "due to the expert witness's mistakes." Thus, it awarded Western $16,337.50 for expert witness fees.

We conclude that the trial court erred by including the assistant's fees in the award of costs, and therefore, we remand the case to the trial court to recalculate the costs award to include only the expert's fees and then to reduce that amount as appropriate based on the expert's mistakes. *See Perkins, supra.*

### VII. Punitive Damages

In its cross-appeal, Western contends that the trial court erred in granting E–One's motion for judgment notwithstanding the verdict and vacating the jury's award of punitive damages. We agree.

A court may enter a judgment notwithstanding the jury's verdict only if the evidence is such that reasonable persons could not reach the same conclusion as the jury. *Mari v. Wagner Equip. Co.,* 721 P.2d 1208 (Colo.App.1986). In applying this standard, we must consider the evidence in the light most favorable to the verdict. *Wesley v. United Servs. Auto. Ass'n,* 694 P.2d 855 (Colo.App.1984).

Section 13–21–102(1)(a), C.R.S.2005, which permits an award of exemplary damages, provides in part:

In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

Exemplary damages are justified when the act causing the plaintiff's injuries was performed "with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive." *Tri–Aspen Constr. Co. v. Johnson,* 714 P.2d 484, 486 (Colo.1986)(quoting *Frick v. Abell,* 198 Colo. 508, 511, 602 P.2d 852, 854 (1979)). "Wanton and reckless" conduct is defined as "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences." *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 215 (Colo. 1984).

The party requesting exemplary damages must prove the statutory standards beyond a reasonable doubt. *Tri–Aspen, supra.* The trier of fact has the discretion to award exemplary damages. *Eads v. Dearing,* 874 P.2d 474 (Colo.App.1993). However, the sufficiency of the evidence to justify an award of exemplary damages is a matter of law, which we review de novo. *Eads, supra.*

Here, the jury could conclude beyond a reasonable doubt that E–One was aware that its purposeful interactions with Costello could have, and later did, cause substantial harm to Western.

Costello testified that he had provided information to E–One about Western's poor cash flow situation. He further testified regarding ongoing conversations that he had had with E–One's regional manager and other E–One employees regarding the potential termination of Western's contract and his possible employment with E–One. Costello

did not tell Western about any of these conversations.

Costello also testified that although Western's president had told him to have payments for certain fire trucks sent to Western, he disregarded that instruction because E–One's manager told him to have the payments sent directly to E–One. Costello admitted that he was following E–One's manager's instructions, instead of Western's president's instructions.

E–One's manager testified that Costello called him one day about a particular bid that Costello wanted to submit, but that Western did not want to submit. The manager helped Costello prepare the bid. However, neither E–One's manager nor Costello told Western's president that they had submitted a bid, even though it was on behalf of Western. The president later submitted another bid on behalf of Western, unaware that the first bid had been submitted.

Regarding the bidding situation, Costello sent an e-mail to his wife and E–One's aerial specialist, stating:

[T]his will be real interesting the next 2–3 days, [E–One's manager] and I are bidding these units factory direct, with a 10% bid-bond, insurance certificate, etc. [The president and his assistant] are bidding the units also, without a bid-bond or insurance certificate, so their [Western's] bid will be thrown out.

E–One's specialist responded, "You have my permission to kick [Western's] ass."

There is sufficient evidence supporting the jury's findings that E–One's conduct was wanton and reckless. E–One's covert interactions with Costello clearly worked to the detriment of Western's employment relationship with him and ultimately ended in his termination. *See Ajay Sports, Inc. v. Casazza*, 1 P.3d 267 (Colo.App.2000)(evidence was sufficient to support the jury's award of exemplary damages where the defendant director negotiated liability releases for himself to the detriment of the corporation and disregarded the solvency of the corporation on the

date of the distribution); *McCrea & Co. Auctioneers v. Dwyer Auto Body*, 799 P.2d 394 (Colo.App.1989)(the trial court erred in vacating the jury's award of punitive damages where evidence established that the defendant had allowed its former business partner to make significant improvements to its property and then evicted the partner in order to eliminate it as a competitor for another contract).

Accordingly, the jury could find that E–One's actions were purposefully performed with an awareness of the risk in disregard of the consequences, and its award of punitive damages against E–One must be reinstated. *See Palmer, supra.*

The judgment is reversed as to the denial of punitive damages and as to the amount of costs and prejudgment interest, and the case is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

WEBB and NIETO *, JJ., concur.