CITY COUNCIL OF the CITY OF CHERRY HILLS VILLAGE, Colorado; and City of Cherry Hills Village, Colorado, Plaintiffs–Appellants and Cross–Appellees,

v.

SOUTH SUBURBAN PARK AND RECREATION DISTRICT, Defendant–Appellee and Cross–Appellant.

No. 05CA0292.

Colorado Court of Appeals, Div. III.

March 22, 2007.

Murray Dahl Kuechenmeister & Renaud LLP, Malcolm M. Murray, Denver, Colorado; Davis Graham & Stubbs LLP, Andrew M. Low, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Paul C. Rufien, P.C., Paul C. Rufien, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge WEBB.

In this statutory action for exclusion of property within a municipality from a special district, the trial court ordered the exclusion of the territory described in the petition upon certain conditions. Petitioners, the City Council of the City of Cherry Hills Village, Colorado and the City of Cherry Hills Village, Colorado (collectively, Cherry Hills), appeal the portion of the trial court's order that requires Cherry Hills to pay the special district fair market value (FMV) in the amount of $9,660,838. Respondents, South Suburban Park and Recreation District and the Board of Directors of the South Suburban Park and Recreation District (collectively, the District), cross-appeal on the basis that exclusion should not have been ordered because Cherry Hills would be unable to provide the services that had been provided by the District.

We conclude that the trial court misinterpreted the statute as requiring payment of FMV. Therefore, we vacate the order and remand for further proceedings consistent with this opinion, which rejects all other contentions of the parties.

## I. Background

An election was held that authorized Cherry Hills to seek exclusion under § 32–1–502, C.R.S.2006, of certain parks, improvements, and other property within its boundaries (facilities) from the District's ownership and oversight. Cherry Hills then petitioned the trial court for exclusion of the facilities. Both parties submitted statutorily required exclusion plans, which differed, and despite

negotiation the parties could not agree. The trial court held a hearing on the opposing plans.

Cherry Hills' plan provided for its maintenance of the facilities and reimbursement to Cherry Hills residents for the differential cost of recreational programs previously available to them at resident rates through other facilities located elsewhere in the District. Nevertheless, the District asserted that Cherry Hills had failed to meet the condition for exclusion of agreeing "by resolution, to provide the service provided by the special district to the area described in the petition on and after the effective date of the exclusion order." Section 32–1–502(2)(a), C.R.S.2006.

The trial court ordered the facilities excluded from the District, subject, as relevant here, to Cherry Hills' maintenance and reimbursement obligations, as well as to Cherry Hills' paying the District $9,660,838. Based on conflicting evidence, the court determined this amount to be the FMV of the facilities. On appeal, the parties do not dispute the determination of FMV.

## II. Law

Section 32–1–502(2)(d), C.R.S.2006, provides:

> If the municipality and the special district are unable to agree upon a single plan, the court shall review the plans of the municipality and the special district and direct each to carry out so much of their respective plans in which there is no disagreement and make such other provisions as the court finds fair and equitable, and shall make such allocation of facilities, impose such responsibilities for the discharge of indebtedness of the special district, and impose such other conditions and obligations on the special district and the municipality which the court finds necessary to permit the exclusion of territory from the special district and the transfer of facilities which are necessary to serve the territory excluded without impairing the quality of service nor imposing an additional burden or expense on the remaining territory of the special district. *For the purpose of making such determination,* *the criteria set forth in this paragraph (d) and paragraphs (b) and (c) of this subsection shall be considered.* The respective portions of the plans to be performed, the transfer of facilities, and the requirements for the discharge of indebtedness of the special district and other conditions and obligations imposed by the court shall be specifically set forth in the order excluding territory from the special district.

(Emphasis added.)

Section 32–1–502(b), C.R.S.2006, requires that the municipality provide "the services" provided by the special district.

Section 32–1–502(2)(c), C.R.S.2006, provides in relevant part:

> The court's review of the provisions of the contract shall include, but not be limited to, consideration of the amount of the special district's outstanding bonds, the discharge by the municipality or the territory excluded from the special district of that portion of the special district's indebtedness incurred to serve the territory proposed for exclusion, *the fair market value and source of special district facilities located within the territory for exclusion,* the facilities to be transferred which are necessary to serve the territory proposed for exclusion, the adequacy of the facilities retained by the special district to serve the remaining territory of the special district, the availability of the facilities transferred to the municipality for use, in whole or in part, in the remaining territory of the special district, the effect which the transfer of the facilities and assumption of indebtedness will have upon the service provided by the special district in territory which is not part of the exclusion, and the extent to which the exclusion reduces the services or facilities or increases the costs to users in the remaining territory of the special district.

(Emphasis added.)

Statutory interpretation is a question of law that we review de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654 (Colo.2000).

Statutes should be interpreted to effect the General Assembly's intent, giving the words

in the statute their plain and ordinary meaning. *Golden Animal Hosp. v. Horton,* 897 P.2d 833, 836 (Colo.1995). A statute should be interpreted as a whole, giving effect to all its parts. *Zab, Inc. v. Berenergy Corp.,* 136 P.3d 252, 255 (Colo.2006). Conflict between statutory provisions should be avoided. *West v. Roberts,* 143 P.3d 1037, 1044 (Colo.2006).

If the language of a statute "is clear and the intent of the General Assembly may be discerned with certainty, we need not resort to other rules of statutory interpretation." *W. Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 573 (Colo.App.2006). But if the language is ambiguous, we look to "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute." *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004) (quoting *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002)).

Courts also presume that the legislature intended a just and reasonable result. Section 2–4–201(1)(c), C.R.S.2006. Thus, courts will not interpret a statute in a manner that leads to an absurd or unreasonable result. *See, e.g., In re Marriage of Roosa,* 89 P.3d 524, 528 (Colo.App.2004).

### III. Cherry Hills' Appeal

Cherry Hills raises four contentions of error as to the FMV award. We agree with only one of Cherry Hills' contentions and on that basis conclude that remand is necessary. However, we address each contention in turn because of its potential effect on remand.

As a preliminary matter, the District asserts that at least two of these contentions were raised for the first time in the combined answer and reply brief. However, we do not read the opening brief so narrowly. In addition, we note that in its reply brief on cross-appeal, the District said that it "will negate City's [new] statutory interpretations on oral argument." And at oral argument, the District stated that further briefing would unnecessarily delay this appeal.

### A.

■ Cherry Hills first contends the trial court erred by considering the criteria in § 32–1–502(2)(b), (c), and (d) (statutory criteria)—which include FMV—in deciding whether the overall plan was "fair and equitable," without first finding that the exclusion would result in either an impairment of the quality of service or the imposition of an additional burden or expense on the District. We disagree.

Cherry Hills' contention focuses on the following language:

> *[The court shall]* ... *make such other provisions as the court finds fair and equitable,* and shall make such allocation of facilities, impose such responsibilities for the discharge of indebtedness of the special district, and impose such other conditions and obligations on the special district and the municipality which the court finds necessary to permit the exclusion of territory from the special district and the transfer of facilities which are necessary to serve the territory excluded *without impairing the quality of service nor imposing an additional burden or expense on the remaining territory of the special district.* For the purpose of making *such determination,* the criteria set forth in this paragraph (d) and paragraphs (b) and (c) of this subsection (2) shall be considered.

Section 32–1–502(2)(d) (emphasis added).

This language addresses the scenario in which—as occurred here—a municipality and a special district agree on some but not all terms of a plan for exclusion, leaving the court to establish "such other provisions," that is, additional terms binding on both parties. According to the plain language, those terms must be "fair and equitable."

Further, "such other provisions" may have to address (1) allocation of facilities, (2) discharge of district indebtedness, and (3) the parties' "other conditions and obligations," as "necessary to serve the territory excluded." This necessity, however, is bounded by two factors, "without impairing the quality of service nor imposing an additional burden or expense on the remaining territory of the special district."

This structure clearly balances the needs of both "the territory excluded" and "the remaining territory." Applying "fair and equitable" only to the two considerations involving "the remaining territory," as Cherry Hills argues, would be unreasonable, because exclusion does not serve the public interest unless both the excluded territory and the remaining territory meet the needs of the different user groups after exclusion. We discern no basis in the statute for applying the "fair and equitable" standard in a manner that affords one group priority over the other group.

Thus, the "determination" that opens the door to considering "the criteria set forth in ... paragraph (d) and paragraphs (b) and (c)," is what "other provisions" the court establishes to create a complete exclusion plan, not just its treatment of the prohibition against impairing service or causing an additional burden or expense on the district. And we perceive the quality of service and additional burden language in § 32–1–502(2)(d) as an outer limit on the court's power to add provisions to the exclusion plan, not as a prerequisite to considering the statutory criteria in making the exclusion "fair and equitable." This construction interprets the statute as a whole, giving effect to each of its provisions. *See Zab, Inc. v. Berenergy Corp., supra,* 136 P.3d at 255.

Accordingly, we conclude that the trial court did not err in considering the statutory criteria—including FMV—to ascertain whether it was acting in a "fair and equitable" manner, without first finding that an impairment of the quality of service or the imposition of an additional burden or expense on the District would result from the exclusion.

## B.

Cherry Hills next contends that if consideration of the statutory criteria is not limited as it argued in subsection A of this section, then the trial court erred by not specifically addressing how each statutory criterion affects the FMV award. We disagree.

A trial court's order is "presumed to have been entered after due consideration of all the evidence admitted upon the trial." *Howard v. Lester,* 153 Colo. 199, 201, 385 P.2d 121, 122 (1963). Appellate courts are "obligated to search the record for evidence to support the findings of fact." *Bockstiegel v. Bd. of County Comm'rs,* 97 P.3d 324, 328 (Colo.App.2004); *see Colo. Mun. League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40, 45 (Colo.1988).

The term "shall" in a statute generally "indicates that this term is mandatory." *Pearson v. Dist. Court,* 924 P.2d 512, 516 (Colo.1996); *see DiMarco v. Dep't of Revenue,* 857 P.2d 1349, 1352 (Colo.App.1993).

Here, § 32–1–502(2)(d) provides that the statutory criteria "shall be considered." Cherry Hills argues that this mandate was violated because the trial court did not articulate a conclusion regarding each of these criteria in its order. Specifically, Cherry Hills points to the order's failure to reference the sources of funds used to acquire some of the transferred facilities and the availability of those facilities for future use by the District residents. We are not persuaded.

Cherry Hills presented evidence regarding the sources of funds used to acquire some of the facilities through historical records and testimony of an appraiser. Cherry Hills also raised this issue in its closing argument. And during a post-hearing telephone conference with all counsel, the trial court said it had "considered the sources of these properties to the extent the information has been provided to it."

Regarding the future availability, the Cherry Hills Manager testified that the facilities would still be available for use by the District residents. Cherry Hills presented closing arguments regarding continued availability of the facilities to the public. The trial court then made a specific finding: "The facilities to be transferred cannot currently be managed to exclude the general public. Accordingly, these Facilities will, at least initially after exclusion, remain available for the use of District residents."

Cherry Hills cites no Colorado authority suggesting that "shall be considered" re-

quires the trial court to articulate a formula whereby each criterion plays a role in the "other conditions" it imposes on the parties. Nor have we found any such authority. Further, this interpretation would be contrary to numerous cases holding that a trial court's damages award need not be explained with mathematical precision. *See, e.g., Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 244 (Colo.2003); *Peterson v. Colo. Potato Flake & Mfg. Co.*, 164 Colo. 304, 309–10, 435 P.2d 237, 239–40 (1967).

Accordingly, we discern no error in the trial court's failure specifically to address all the statutory criteria in its order.

## C.

■ Cherry Hills next contends the trial court erred in finding that the statute required Cherry Hills to reimburse the District for the FMV of the facilities. We agree that because the court appears to have so interpreted the statute, which we conclude is erroneous, a remand for further findings is required.

Here, the court found: "In order for the exclusion of the subject territory to be fair and equitable, the City must pay to the District the FMV of the facilities to be transferred to the City." This finding suggests that the trial court treated the "fair and equitable" criterion as requiring reimbursement for the FMV of the facilities.

Moreover, other findings that might support FMV compensation to the District lack consistency. On the one hand, the court found that "[w]ith moneys [sic] received from the City ... the exclusion will not impose an additional burden or expense on the remaining territory of the District." On the other hand, it found that "[t]he exclusion of the territory ... will not impair the quality of services provided by the District nor impose an additional burden or expense on the remaining territory of the District."

Although the statute clearly directs the trial court to make provisions in the exclusion plan "as the court finds fair and equitable," and references FMV as *one* factor the court should consider, it does not require a trial court to order a city to reimburse a special district for the FMV of the transferred facilities. Nor do we discern any basis for implying such a minimum requirement.

To the contrary, had the General Assembly intended to require reimbursement of FMV, as opposed to requiring consideration of FMV as only one of several criteria in the "fair and equitable" analysis, the statute would have specifically so stated. *Cf. Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1004 (Colo.2005) (courts should not add words to a statute where the legislature's intent is clear). The General Assembly has done so in other statutes. *See, e.g.,* § 24–56–117(1)(c), C.R.S.2006 (real property acquisition statute specifically measuring compensation by FMV); § 31–15–707(1)(a)(II), C.R.S.2006 (municipal utility condemnation statute specifically measuring compensation by FMV).

Moreover, if the General Assembly had intended FMV to be a minimum requirement, it would not have included other criteria in the statute that may, on particular facts presented, weigh against reimbursing a district for the FMV of excluded facilities. For example, considering the "source of special district facilities located within the territory proposed for exclusion" could undercut per se entitlement to FMV reimbursement if such facilities had cost a district nothing to acquire. Hence, treating FMV as a minimum requirement of a "fair and equitable" exclusion plan could create conflict with other parts of the statute, an interpretation which we must avoid. *See West v. Roberts, supra,* 143 P.3d at 1044.

Accordingly, we conclude that the trial court erred in finding that to be "fair and equitable," it must require Cherry Hills to reimburse the District for the FMV of the facilities.

We have rejected Cherry Hills' contention that the FMV award should also be overturned because the court failed to address all the statutory criteria. But without the finding that the "fair and equitable" criterion required payment of FMV, discerning exactly why the court made this award would be problematic. Hence, we conclude that remand is necessary to allow the court to re-

consider this award and further explain its rationale if it again awards the District FMV.

## D.

Cherry Hills finally contends that even if FMV reimbursement is otherwise permissible, it contradicts the doctrine that a public agency holds parks and similar properties not in a proprietary capacity, but in trust for the general public's benefit. *See, e.g., Strachan v. Mayor*, 326 Mass. 659, 662, 96 N.E.2d 392, 394 (1951); *Trs. of Rutgers Coll. v. Richman*, 41 N.J.Super. 259, 288, 125 A.2d 10, 26 (1956).

We reject this contention for two reasons. First, Cherry Hills cites no Colorado case, and we have found none, adopting this doctrine. Second, arguably the supreme court disapproved of it in *Welch v. City & County of Denver*, 141 Colo. 587, 594, 349 P.2d 352, 355 (1960) ("There is no merit to the argument advanced by counsel for Welch that the park land in question was held by the City under a common law trust.").

In sum, on remand the trial court should correct its erroneous conclusion that "fair and equitable" requires Cherry Hills to reimburse the District for the FMV of the facilities, and it should articulate the effect, if any, of this correction on its other findings and conclusions.

## IV. The District's Cross–Appeal

■ The District contends the trial court should not have ordered exclusion because it erred in concluding that "the service to be provided by the municipality need not be the same quality as that provided by the special district" and then finding that Cherry Hills would be able to provide the services previously provided by the District on and after the effective date of the exclusion order. We disagree.

■ A trial court's finding that a municipality has expressed its intent to provide the services currently provided by a special district will be upheld unless it is "clearly arbitrary and capricious." *City & County of Denver v. Bd. of Dirs.*, 38 Colo.App. 53, 56–57, 554 P.2d 714, 717 (1976).

Under § 32–1–502(2)(a) and (b), "[t]he service to be provided by the municipality will be the service provided by the special district" to the excluded territory "on and after the effective date of the exclusion order." Whether "will be the service" means will be the *same* service is unclear, and thus we consider extrinsic aids to interpretation. *See Bd. of County Comm'rs v. Costilla County Conservancy Dist., supra*, 88 P.3d at 1193.

Before amendment in 1985, this subsection provided in relevant part: "The quality of the service to be provided by the municipality will not be inferior to the service provided by the special district...." Colo. Sess. Laws 1981, ch. 382, § 32–1–502(2)(b) at 1559. Deletion of the "quality" criterion regarding the service provided suggests that the General Assembly intended to require general equivalency of service, but not exact duplication.

The 1985 legislative history supports this view. One of the amendment's sponsors explained that emphasis on detailed comparisons of quality of services had become an impediment to judicial approval of exclusion petitions.

The District's interpretation would require that courts compare in detail services previously provided by a district with those to be provided by a municipality. This inquiry would be difficult, time consuming, and potentially indeterminable.

Here, for example, the District argues that Cherry Hills' reimbursement program will not fully compensate "heavy users" of its services. However, the District failed to present statistical or other evidence quantifying the number of such users or the extent that any of them would not be fully compensated.

The District's argument that Cherry Hills cannot provide the same service because its proposed budget for maintaining the facilities and reimbursing users is significantly less than expenses allocated to these facilities by the District suffers from the same flaw. This comparison rests on several unknown and potentially indeterminable factors, most importantly the extent that Cherry Hills residents will continue to use District services available at other facilities although they are no longer residents of the District. Thus,

forcing a court to engage in such a budgetary analysis would require mathematical exactitude contrary to the intent of the 1985 amendment.

The District's argument that Cherry Hills had not implemented procedures to provide the same service provided by the District as of the exclusion hearing, in that Cherry Hills had not yet set up a parks and recreation department, is also unpersuasive. As the trial court found, Cherry Hills' resolution agreed to provide the service the District formerly provided. The statute's language is prospective: "The service to be provided by the municipality *will be* the service provided by the special district...." Section 32–1–502(2)(b) (emphasis added).

Interpreting the statute to require that Cherry Hills be able to provide services *before* exclusion would lead to an absurd result by forcing Cherry Hills to create a facilities maintenance program without knowing whether the trial court would approve exclusion. We decline to adopt such an unreasonable interpretation. *See In re Marriage of Roosa, supra,* 89 P.3d at 528.

Accordingly, we conclude that the trial court did not err by finding that Cherry Hills would be able to provide the services previously provided by the District on and after the effective date of the exclusion order.

## V. Conclusion

The order is vacated, and the case is remanded for further proceedings. On remand, the trial court shall delete its finding that the "fair and equitable" criterion alone requires Cherry Hills to reimburse the District for the FMV of the facilities, and may revise its other findings and conclusions consistently with this opinion. The court shall not take further evidence, but may in its discretion allow additional briefing. Without knowing the extent of such amended findings, we cannot now determine whether the record otherwise supports an award of FMV.

Judge TAUBMAN and Judge ROMÁN concur.