The CITY COUNCIL OF the CITY OF CHERRY HILLS VILLAGE, Colorado; and the City of Cherry Hills Village, Colorado, Petitioners–Appellants,

v.

SOUTH SUBURBAN PARK AND RE-CREATION DISTRICT; the Board of Directors of the South Suburban Park and Recreation District; and all Tax-paying Electors of the Territory Sought to be Excluded, as a class, Respondents–Appellees.

No. 08CA1232.

Colorado Court of Appeals, Div. II.

May 28, 2009.

Davis Graham & Stubbs, LLP, Andrew Low, Terry Miller, Denver, Colorado; Kissinger & Fellman, PC, Kenneth Fellman, Denver, Colorado, for Petitioners–Appellants.

Paul C. Rufien, PC, Paul Rufien, Highlands Ranch, Colorado, for Respondents–Appellees.

Opinion by Judge CASEBOLT.

In this case involving exclusion of a municipality from a special district, petitioners, the City of Cherry Hills Village, Colorado, and its City Council (collectively, Cherry Hills), appeal the order of the district court directing them to pay a "transfer amount" of $9,660,838 to respondent, the South Suburban Park and Recreation District (District), as a condition of the exclusion of Cherry Hills from the District. In a prior appeal addressing, among other things, the propriety of the transfer amount, a division of this court concluded that the trial court had misinterpreted one of the statutes governing exclusion of municipalities from special districts. *City Council v. S. Suburban Park & Recreation Dist.*, 160 P.3d 376, 381 (Colo. App.2007) (discussing the application of § 32–1–502, C.R.S.2008) (*Cherry Hills I* ). The division therefore remanded the case for reconsideration of the award. Because the trial court has now properly reconsidered and explained the rationale for its decision to require Cherry Hills to make the transfer payment to the District, we affirm.

### I. Facts and Procedural History

Cherry Hills residents voted to withdraw from the District and assume for themselves the responsibility of providing recreational services and maintaining parks and recreational facilities (facilities) located within city boundaries. Accordingly, Cherry Hills submitted a statutorily required petition and exclusion plan to the court, *see* § 32–1–502, and requested that it no longer be a part of the District. Following a hearing, the trial court granted the petition and ordered the District to convey the facilities to Cherry Hills, but ordered Cherry Hills to pay the District a transfer amount of $9,660,838, which was the fair market value (FMV) of the facilities.

The trial court's original order indicated its understanding that Cherry Hills was required by statute to pay the District the FMV of the excluded facilities. On appeal, a division of this court held that understanding to be erroneous, and remanded the case so that the trial court could "reconsider this award and further explain its rationale if it

again awards the District FMV." *Cherry Hills I,* 160 P.3d at 381–82.

On remand, the trial court again ordered Cherry Hills to pay the District the FMV of the facilities. Its reasons for doing so were based primarily upon the likelihood of economic hardship to the District caused by lost tax revenue following Cherry Hills' exclusion. This appeal ensued.

## II. Compliance with This Court's Mandate

Cherry Hills first contends that the trial court failed to follow the division's mandate on remand. Specifically, it argues that the trial court failed to delete its finding that the statute's "fair and equitable" standard required Cherry Hills to pay FMV for the excluded facilities, and that the court failed to further explain its rationale for the award of FMV. We disagree.

### A. Mandate Standards and Direction

■ An appellate court's pronouncement on an issue in a case presented to it becomes the law of the case. *People v. Roybal,* 672 P.2d 1003, 1005 (Colo.1983). Trial courts have no discretion to disregard binding appellate rulings. "[T]he law of the case as established by an appellate court must be followed in subsequent proceedings before the trial court." *Hardesty v. Pino,* —— P.3d ——, ——, 2009 WL 261506 (Colo.App. No. 07CA1105, Feb. 5, 2009) (quoting *Roybal,* 672 P.2d at 1005) (emphasis omitted). Consequently, we review de novo whether a trial court has complied with a prior appellate ruling. *Id.*

When a municipality and a special district cannot agree on the terms of an exclusion plan, a trial court must create "such ... conditions and obligations on the special district and the municipality which the court finds necessary to permit the exclusion of territory from the special district ... without impairing the quality of service nor imposing an additional burden or expense on the remaining territory of the special district." § 32–1–502(2)(d), C.R.S.2008. The trial court's exclusion provisions must be "fair and equitable." *Id.*

When creating a fair and equitable plan for exclusion, a trial court must consider a number of statutorily delineated factors. § 32–1–502(2)(b)–(d), C.R.S.2008. Such mandatory considerations include the FMV of the property to be excluded, the effect the exclusion will have on the service provided by the special district in areas not part of the exclusion, and the increased costs to users in the remaining territory of the special district. § 32–1–502(2)(c).

In *Cherry Hills I,* the division concluded that the trial court erroneously interpreted the exclusion statutes to require that Cherry Hills reimburse the District for the FMV of the facilities. Thus, the division instructed the trial court to "delete its finding that the 'fair and equitable' criterion alone requires Cherry Hills to reimburse the District for the FMV of the facilities." 160 P.3d at 383. It remanded the case "to allow the court to reconsider this award and further explain its rationale if it again awards the District FMV." *Id.* at 381–82.

### B. Compliance with Mandate Standards

#### 1. Deletion of Finding

■ Cherry Hills contends that the trial court did not heed the division's mandate to delete its finding that the "fair and equitable" criterion requires Cherry Hills to pay the District FMV. We disagree.

The trial court's original order stated that "for the exclusion of the subject territory to be fair and equitable, the City *must* pay to the District the [FMV] of the facilities to be transferred to the City" (emphasis added). Its order following remand stated that "in order for the exclusion to be fair and equitable, the City *should* pay to the District the FMV of the transferred facilities" (emphasis added).

Cherry Hills argues that the change from "must" to "should" was merely "cosmetic" and did not respond to the division's mandate. However, the essential holding of the prior appeal was that the trial court was not required to award FMV—the division did not hold that the trial court was prohibited from doing so. *Cherry Hills I,* 160 P.3d at 381. Thus, the revised order adequately reflects

the trial court's understanding that it could, but was not required to, award the District the FMV of the excluded facilities.

### 2. Trial Court's Explanation of Its Rationale

■ Cherry Hills argues that the trial court failed to follow the division's mandate to reconsider and explain its order that Cherry Hills pay the District $9,660,838. We disagree.

The trial court found on remand that the financial impact of Cherry Hills' exclusion upon the District would exceed $1 million per year, resulting in lost revenues of over $10 million by the year 2014. The court also found that the loss of tax revenue to the District caused by the exclusion would impair the District's ability to maintain some of its programs and activities, and that the exclusion would result in a reduction in services, or an increase in fees, or both. The court required Cherry Hills to pay the District FMV for the facilities so that the District could either replace those facilities or use the money to compensate for lost tax revenue.

The trial court's reasons for granting the transfer amount are clear from its order. We thus perceive that the trial court adequately reconsidered the transfer amount and explained its rationale, and that its rationale was based on proper statutory considerations. *See* § 32–1–502(2)(c).

### III. Statutory Prohibition on Taxation

Cherry Hills contends that the trial court's second order must be vacated because the trial court intended the $9,660,838 transfer amount as a means of evading the statutory ban on continued taxation by a special district of property excluded from that district, contrary to section 32–1–503, C.R.S.2008. We disagree.

### A. Principles of Interpretation

The proper interpretation of a statute is a question of law that we review de novo. *Alvarado v. People,* 132 P.3d 1205, 1207 (Colo.2006).

Statutes should be interpreted to effectuate the General Assembly's intent, giving the words in the statute their plain and ordinary meaning. *Golden Animal Hosp. v. Horton,* 897 P.2d 833, 836 (Colo.1995). A statute should be interpreted as a whole, giving effect to all its parts. *Zab, Inc. v. Berenergy Corp.,* 136 P.3d 252, 255 (Colo.2006). Conflict between statutory provisions should be avoided. *West v. Roberts,* 143 P.3d 1037, 1044 (Colo.2006).

As the division in *Cherry Hills I* stated, if the language of a statute "is clear and the intent of the General Assembly may be discerned with certainty, we need not resort to other rules of statutory interpretation." 160 P.3d at 379 (quoting *W. Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 573 (Colo.App.2006)). But if the language is ambiguous, we look to "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute." *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo. 2004) (quoting *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002)).

### B. Statutory Language

■ Territories excluded from a special district must not be "subject to any *property tax* levied *by the board* for the operating costs of the special district." § 32–1–503(1), C.R.S.2008 (emphasis added). "The board" refers to the special district's board of directors. § 32–1–103(1.5), C.R.S.2008. This statutory provision exists, in part, to prevent double taxation for government services. § 32–1–102(3), C.R.S.2008.

### C. Application

■ Here, although the trial court considered statutorily permissible factors in crafting its order, most of those factors were ultimately related to lost tax revenue to the District. We may assume—for purposes of our analysis only—that lost tax revenue was the sole reason the trial court ordered Cherry Hills to pay FMV. Our inquiry is thus confined to whether the transfer amount was a statutorily impermissible "property tax levied by the board for the operating costs of the special district." *See* § 32–1–503(1).

For the following reasons, we conclude that it was not.

### 1. The Transfer Amount Was Not Levied by the Board

■ First, the $9,660,838 payment was not "levied by the board." Instead, it was imposed by the trial court's order. The award was effectuated by the trial court's power to shape fair and equitable provisions of an exclusion order, *see* § 32–1–502(2)(d), not the power of the District's board of directors to levy taxes. *See* § 32–1–1201, C.R.S.2008. Courts have no power to impose taxes, a function reserved for the legislative branch of government. *See* Colo. Const. art. X, § 2. That the District argued in support of the monetary award does not mean that the award was levied by the District's board of directors. The trial court made the ultimate decision to order payment.

### 2. The Transfer Amount Was Not a Tax

Second, the purpose and structure of the statutes governing special districts indicate that the transfer amount was not a "tax" forbidden by section 32–1–503(1).

The exclusion statutes are structured to balance the needs of both "the territory to be excluded" and "the remaining territory." *Cherry Hills I,* 160 P.3d at 380. Section 32–1–502 ensures that trial courts address the needs of territories remaining within special districts after exclusion occurs. When a municipality and a district cannot agree on the terms of an exclusion plan, a trial court must create exclusion provisions ensuring that the district's services will not be impacted and no additional burdens or expenses will be imposed upon the remaining territory of the district. § 32–1–502(2)(d). The statute thus protects the interests of citizens who continue to use a district's services after a portion of its original territory has been excluded.

Section 32–1–503(1) protects the interests of taxpayers who live within the excluded territory. That section prevents special districts from continuing to tax the residents of excluded territories after exclusion occurs, thereby ensuring districts cannot preclude or penalize exclusion. *See* § 32–1–503(1). The underlying statutory goal of this provision is to prevent double taxation for the same government service. § 32–1–102(3).

Here, the transfer amount ordered by the trial court is consistent with the balance these statutes attempt to maintain. The trial court was statutorily required to consider the impact of exclusion on the District's services and expenses. *See* § 32–1–503(2)(d). In doing so, it found that the District was likely to lose over $1 million per year following exclusion and that as a result, either services would be reduced, or fees would be increased, or both. The court thus awarded the transfer amount largely so that the District could be compensated for its financial loss, thereby protecting the interests of those who will continue to use the District's services.

The interests of the residents of Cherry Hills—protected by the prohibition on further taxation in section 32–1–503(1)—were not unlawfully disturbed. The transfer amount is not a form of double taxation for the same government service. Cherry Hills may choose to tax its citizens to support the facilities at issue once those facilities are transferred to its control. The transfer amount, however, was intended to support facilities *outside* of Cherry Hills that will remain in the District. Thus, any taxes collected and used to pay the transfer amount will serve a different purpose from taxes used to support facilities within the excluded territory. Accordingly, we conclude that they do not amount to double taxation for the same government function.

Cherry Hills argues that if a special district cannot impose ongoing taxes on excluded property, then a court cannot require a city to make a payment in lieu of such taxes. However, *any* payment of money to a special district as a condition of a city's exclusion could be viewed as being in lieu of lost tax revenue. Thus, accepting Cherry Hills' argument would require adopting an interpretation of section 32–1–503 that effectively prohibits trial courts from ordering monetary transfers upon exclusion. Such an interpretation would be contrary to the exclusion statutes' call for trial courts to resolve exclu-

sion disputes in a manner they find fair and equitable. *See* § 32–1–502(2)(d).

▉ Courts are required to consider economic factors when evaluating exclusion plans. *See* § 32–1–502(2)(c) (requiring consideration of outstanding bonds, fair market value, and increased costs). Requiring consideration of such factors, yet disallowing monetary awards to compensate for their effects, would negate the equitable powers the statutes grant to the trial court. We avoid interpretations that result in conflicts between statutory provisions, *see Roberts,* 143 P.3d at 1044, and decline to adopt one here.

### 3. The Transfer Amount Was Not a Property Tax

We also conclude that the transfer amount was not a "property tax" within the standard definition of the term. A property tax is a "tax levied on the owner of property ([especially] real property), [usually] based on the property's value." *Black's Law Dictionary* 1498 (8th ed.2004). Here, however, the trial court based the transfer amount on the FMV of the facilities to be transferred from the District's control to Cherry Hills, not upon the assessed valuation of property within Cherry Hills. Thus, it was not a tax levied on the owners of property based on the properties' value. *See id.*

Accordingly, the $9,660,838 transfer amount was not prohibited by section 32–1–503.

In light of our determination, we need not address the remaining contentions of the parties.

The order is affirmed.

Judge ROY and Judge CONNELLY concur.